ELIAS LYMAN, *vs.* JOSEPH DORR, *and others.*

*Dictum*—Where a forfeiture of a grant of Turnpike road has been taken, the road is, probably, to be considered as a publick high-way.

The plaintiff, on the 27th of January, 1819, brought his action on the case, against an incorporated Bridge Company, to recover damages, for erecting a toll-house and gate upon his land, and had judgment. Afterwards, he brought this action of trespass, against the servants and agents of the company who constructed the works, for erecting a part of the bridge itself, and the same toll-house and gate, and continuing the same, down to a still later period, upon his land.—*Held*, That the first action is a bar to any claim for damages, antecedent to the 27th of January, 1819; and that the defendants, who constructed the works, are not liable for their *continuance*, after that period; (no act of theirs being shown, affirming such continuance,) but the company only.

THIS was a motion by the plaintiff, for a new trial, founded upon exceptions taken to the decision of the county court, of certain questions of law, arising upon the jury trial, and placed upon the record by the agreement of the parties; and which passed to this Court, for a final decision, agreeably to the twelfth section of the act, in addition to *The Judiciary Act,* passed November 18, 1824.

The action was *trespass,* for erecting a bridge, an abutment, two piers for said bridge, and a toll-house and gate, upon the plaintiff's land.

*Plea.*—1. Not guilty *infra sex annos.*

2. Not guilty, with *notice,* that under the general issue, they will give in evidence, an act, passed 7th November, 1800, incorporating Wm. Page, and others, for the purpose of making a turnpike road, by the name of *The Connecticut River T. P. Co.*; that said company was organized, and that in 1801, said corporation laid out the turnpike road, through the land described in the declaration, and paid all damages to all persons, to whom damage was assessed----that the turnpike was in existence, and used as such, for a long time, till February, 1819, and has been ever since, and still is, used as a publick highway; that a bridge was erected and built, within the marked survey across White River upon the said laid road, and used for publick travel, till 1815; that on the 10th of November, 1815, the Legislature did incorporate Nathan Geer, and others, for the purpose of building a bridge across said White River, by the name of *The White River Bridge Company;* that said company was organized, and in pursuance of said act, and of an act in addition thereto, and with the consent of said Turnpike Company, did, in 1818, erect a bridge across said river, within the survey of said turnpike road; and that the same was finished and accepted, according to said acts, by the 29th of August, 1819, which is still continued as a publick toll bridge, on said turnpike road.

That the defendants, in 1817, entered upon said turnpike road, to build said bridge, under the direction of said White River Bridge Co. and for the purpose of building and repairing said Bridge, for publick travel, as they lawfully might do. That they committed the said several supposed trespasses, by the licence and consent of the plaintiff. And that, in 1822, in the

28

Lyman
*vs.*
Dorr, *et al.*

Supreme Court, the plaintiff recovered a judgment and satisfaction, for building said toll-house and gate, against the said White River Bridge Company.

On the trial, the defendants abandoned the plea of the statute of limitations; and obtained a verdict for their costs on the other issue.

The case agreed upon is as follows.   On the trial, &c. the plaintiff produced testimony, which was admitted by the Court, and read to the jury, as proper to show the plaintiff's title to the premises, described in his declaration; to wit, a series of deeds from Baldwin to Tilden, from Tilden to Buckingham, from him to Gilbert, from him to Hotchkiss, from him to Matson, and from him to the plaintiff, which are referred to; and also produced testimony, tending to show that he took possession of the premises, immediately after the date of his deed, which was in Sept. 1815; and that the defendants committed the trespass complained of, in the year 1818; and that he, the plaintiff, from Sept. 1815, has owned a factory a few rods westward of said premises, and a saw-mill, a little further west still, and had, at that time, sunk a canal, conveying the water from the pond above the saw-mill, and opposite said factory; and from thence took the water to said factory.   And also, tending to show that said bridge, abutment and piers have ever since remained where they were erected, and that said toll-house and gate remained where they were so erected, until the 23d of May, 1823.   And that since the said toll-house and gate have been removed, the plaintiff has continued said canal, twenty feet wide, eastwardly, through the mound southerly of said abutment, and under where stood a part of said toll-house, and extended the same eastwardly to a large brick building, 85 feet long, and forty feet wide, lately erected by the plaintiff, in a cove below said bridge. for the purpose of a factory.   And further tending to show, that he, the plaintiff, gave $550, for the *locus in quo*, being one acre of land, described in his declaration, with a view to its use as a water privilege.

And the plaintiff then, to increase the damages in said action, offered to prove, that when said toll-house and gate were erected, the plaintiff had expended nearly two thousand dollars, in building a wall from said old factory, towards said intended new factory, for securing said canal, and in sinking the upper part of said canal, and in bringing and placing in publick view near said canal, stones for the embankment and walls of the same: and had, during the incumbrance complained of, paid above four thousand dollars for *weaving by hand,* and that he could have done the same weaving in power looms, which he would have built in his new factory, with no greater expense than to pack the yarn for market; and that he would have built such factory and power looms, had he not been prevented by said obstructions, so erected by the defendants.   And that he has built said factory, since said toll house and gate were removed, and got the same nearly ready for business, with the power looms afore-

*Windsor,*
*February,*
*1826.*

*Lyman*
*vs.*
*Dorr, et al.*

said. Which evidence, so offered as aforesaid, was objected to by the said defendants, and was rejected by the Court.

The said defendants then introduced evidence, tending to prove the several matters set up in the several parts of their special notice. Upon which it appeared, among other things, that the plaintiff's writ in said action, mentioned in said notice, in favor of the plaintiff, and against the said White River Bridge Company, was dated January 27th, 1819, and was served January 29th, 1819; and that the judgment therein, was rendered at the *February term* of the Supreme Court, A. D. 1822.

And the counsel for the plaintiff, then and there requested said Court to give in charge to said jury, that said recovery was no bar to the plaintiff's action, in this behalf, and at all events, was no bar to the plaintiff's recovery, for the continuing the said toll-house and gate, after the commencement of the said action, in which said judgment was rendered.

But said Court did not so charge said jury. but did give them in charge, that the said recovery was a bar to the plaintiff's recovering in this action, for any injury prior to the date of said writ of 27th of January, 1819.

There was testimony given to the jury, on said trial, tending to show, that the defendants were all of them proprietors in the stock of the White River Bridge Company, under which they attempted to justify said trespass, at said time, when said trespasses were committed; nor was there any denial of their being such proprietors at that time, nor any evidence, tending to show, that they, or either of them, had since ceased to be proprietors in said stock, as aforesaid, or continued to be proprietors.

And it appeared in evidence, that the charter of the *ancient* White River Bridge Company, mentioned in said special notice, was vacated by a decree of the Supreme Court of this state, in the year 1812. And from that time, said Company ceased to have a gate at said bridge, till Sept. 1818, and that the charter of said Turnpike Company, mentioned in said notice, was vacated by said Supreme Court, in February, 1819. And the counsel for the plaintiff then and there requested said Court to charge said jury, that if said defendants were guilty of erecting said bridge, abutment, piers, toll-house, and gate, they were liable to the plaintiff for the *continuance* thereof, until the same were removed. But said Court refused so to charge; and, on the contrary, did charge said jury, that, as said defendants appeared to have acted as members and agents of said White River Bridge Company, in erecting said bridge, abutment, piers, toll-house, and gate, and they might have since sold out their proprietorship, and moved out of the state, it would be wrong to make them chargeable for continuing the same, without proof of some act of theirs, continuing said obstructions.

There was also given to said jury, evidence tending to show, that the bridge before erected at the place in question, by said ancient Bridge Company, or by said Turnpike Company,

Windsor,
February,
1826.

Lyman
vs.
Dorr, et al.

was not built at the place required by the grant, nor till seven years after the expiration of the grant to said Bridge Company; and that it was swept away by the flood, in March, 1815. And from that time till the building of the present bridge, the *travel* crossed the river at an old fordway, a little further up the stream, westward, than this bridge, and that, during all that time, that part of the plaintiff's land, since used for the bridge and abutment, piers, toll-house, and gate, were not used for any such purpose, nor for any publick travel.

And the counsel for the plaintiff requested the said Court to charge, that, there having before been a bridge and a turnpike road at the same place, made no difference in the plaintiff's right to recover; but said Court refused so to charge, and did charge to the contrary thereof, &c.

And the counsel for the plaintiff request the judges of said Court to allow this case, that the opinion of the Supreme Court may be had thereon.          *Marsh* and *Hutchinson.*

By consent of parties. The above case allowed by us, in Court.

RICHARD SKINNER, *Chief Justice.*
ABNER FORBES,      } *Assistant*
THOMAS EMERSON,  } *Judges.*

*Marsh* and *Hutchinson*, in support of the motion, insisted,
1. That the evidence offered by the plaintiff, with a view to the increase of damages, and rejected by the Court, ought to have been received; and cited *Hatch* vs. *Dwight*, 17 *Mass. Rep.* 289, and *Post* vs. *Munn*, 1 *New Jersey R.* 61.

2. The second question is, whether the Court erred, in not charging the jury, that the recovery of 1812 would not be a bar to an action for the continuance of the obstruction, after the commencement of the action in which the recovery was had.

It is a good ground of error, or of a new trial, that the Court declined stating the law on a point to which its attention is requested, as to state the law erroneously.—*Smith* vs. *Carrington*, 4 *Cranch*, 71.

The Court did not state to the jury, that the recovery would be no bar to damages sustained, after the suit was commenced, but merely that it would be a bar to all damages sustained prior to that period.

We pass to show that, in this last position, the Court erred.

The former declaration complained of the erection of the toll-house and gate, only; but the erection of the abutment and piers were an entirely different injury, and for ought that appears, might have been inflicted by entirely different agents, and coupling them all in this present declaration, cannot surely deprive us of the right to recover for an injury, of which no complaint was made in the former action, unless it should appear to have been inflicted by the same hands, and at one and the same time. In such case, it will not be contended, that the plaintiff can divide his cause of action, and recover for different parts of the same injury, against different defendants, in different actions.

These might, and, doubtless, must have been, entire different jobs of work, and performed at different times: and if so, some defendants would be liable in different actions, and one would be no bar to another. The plaintiff could not combine them in one count, and would not be bound to combine them in different counts, in the same action.

*Windsor,*
February,
1826.

Lyman
*vs.*
Dorr, *et*

If the defendants had pleaded specially and alleged, as they must have done, that the former recovery was for the same cause of action as the present subject of complaint, the allegation could not have been supported, either by a comparison of the two records, or by any proof which was adduced at the trial. And surely we may insist, that the Court ought to have charged explicitly, that the former recovery was no bar to any subsequent injury, arising from a continuance of these obstacles. In this it would seem to us that the Court mistook the law.

If the defendants erected the obstructions, and at the time were interested in the benefits derived from them, and they still continued under the same appearances, the burden of showing that the interest had ceased, lay on the defendants. Nothing of this kind was shown, and yet the charge, from the presumption that such might be the facts, directs the jury, on this point, to find for the defendants. It may be added, that the knowledge of the fact of their having parted with their interest, rested only with the defendants.

It is also observable, that the notice sets up the recovery only as a bar to damages arising from the erection of the toll-house and gate.

If they had released their title, it would not excuse them. If one obstruct the lights of another, and then lease, he is still liable: by leasing, he confirms the injury, and by some authorities, the party injured may have a remedy, either against the lessor or lessee.—*Rouwell* vs. *Prior*, 2 *Salk*, 460.

It is not known that the defendants rely at all on the assignment of the ancient Bridge Company, of their right to the Connecticut River Turnpike Company. If they do, the case shows, that that grant had expired by its own provisions, seven years before it was assigned, or any bridge built, under pretence of its authority. And that when it was erected, under such pretence, it was built without the limits of that grant, and that, in this state of things, the Supreme Court repealed the charter.

3. The only remaining point is, that the bridge and road had been abandoned, where it crossed the plaintiff's land.

It appears by the case, that the bridge erected by the Turnpike Corporation, was carried away in March, 1815, and that no attempt was made by the present Bridge Corporation, to erect one on its ruins, and no entry made on the land of the plaintiff for that purpose, till the fall of 1818, or the spring of 1819. This, we contend, was an entire abandonment; and the right to occupy the ground as private property, and wholly discharged of any easement, reverted to the owner of the soil.

In this situation, then, in September, 1815, there being no bridge, nor any road across the land, nor any talk or pretence

*Windsor,*
*February,*
*1826.*

*Lyman*
*vs.*
*Dorr, et al.*

of reviving either, the plaintiff purchased the soil, and took immediate possession.

Subsequently, a new corporation having sprung into existence, in the fall of 1818, enter on the plaintiff's possession, and commence and continue the trespass complained of—and this without any licence from the owner, or any proceeding to create an easement across this private property of the plaintiff.

If there had been an abandonment, by the Turnpike Corporation, a licence from that company could confer no right.

There surely may be a neglect to improve and occupy a publick highway, long enough to amount to an abandonment: and if so, one would think that three and a half years were a sufficient length of time to amount to such abandonment.

The abandonment must depend, in some measure, on the intent of those who have the right; as leaving a possession of land, without the *animus revertandi*, is an abandonment; and the statute of limitations, in such case, will not continue to run, and another entering, after such abandonment, cannot connect the two possessions, so as to hold by the statute.

There is no evidence or reason to believe, that the Turnpike Company ever had a thought of re-building this bridge. The application for another grant is strong evidence that this was understood to be the case. No one would have deemed it necessary to apply to the Turnpike Company, had not the act incorporating the new Company, made it necessary. And it seems that the Turnpike Co. having abandoned the bridge, very readily consented to permit others to enjoy the privilege.

This was a new corporation. The Turnpike Corporation never had any right to erect a toll bridge over this stream, and could confer no right thereof.

If they had abandoned, the easement had ceased; and the legislature neither did, nor could confer any right on the new corporation, to appropriate private property to publick use, without making compensation. In this, therefore, the charge was wrong.

But the deeds through which the plaintiff makes his title, are made part of the case, and it may be said that the deed from Tilden to Buckingham, and perhaps the subsequent deeds, expressly reserve the right of the Turnpike Corporation, and therefore the plaintiff purchased, subject to their rights.

But it is to be ascertained, what those rights were. It has been decided in this Court, (it is believed more than once,) that the reservation was of nothing more than an easement—the right of passing while the Company should keep an open and publick highway across the premises. And no doubt that this is the obvious and legal construction of the deeds.

When, therefore, the road was abandoned, the purchaser succeeded to all the rights of the original owner of the soil, and this leaves the question precisely where it would be, had there been no reservation in the deeds.

*Windsor,*
*February,*
*1826.*

Lyman
*vs.*
Dorr, *et al.*

The object of the grantor evidently was merely to avoid an imaginary liability on the covenants in his deed.

To this point, see 13 *Mass. Rep.* 256, *Alden* vs. *Murdock,* where a reservation *of a highway, to be kept open forever,* was decided to be a reservation of the easement merely, and not of the soil.

Such surely, are the expressions in said deeds, to wit, *"exclusive* of the *turnpike road,* running *across* said premises.

*Hubbard* and *Everett,* for the defendants, admitted, that if the plaintiff was entitled to recover at all, he ought to have a new trial. Hence, the question, arising from the rejection of the testimony, offered with a view to the *increase* of damages, was immaterial.

2. They contended that the record of recovery, the plaintiff *vs.* the *White River B-idge Company,* given in evidence, is a bar to this action down to January 27, 18 9; and cited *Ham'd N.* p. 70.—*Kitchen, et. al.* vs. *Campbell,* 3 *Wils. R.* 308.—*Ferrer's case,* 6 *Co. Rep.* 7—and *Cro. Eliz.* 668, *S. C.*

3. That the defendants, though members and agents of the corporation, at the time of erecting the bridge, &c. are not liable for the *continuance* of those works, in this action, without proof of some act of theirs continuing the same. That trespass will not lie for the continuance of a nuisance.

4. That the vacating of the grants of the Turnpike Company, and the old Bridge Company, gave the plaintiff no additional rights; for, the forfeiture of the franchises was a forfeiture of the right of taking toll only, and the road remained as a publick highway. The *town* supports the road, and must have rebuilt the Bridge, had it not been for the second grant. That the passing the river at the fordway, after the destruction of the first bridge, was a matter of necessity, and no evidence of abandonment. That there was an easement upon this land, and it might be transferred without a new grant; and that this easement was expressly reserved, in the plaintiff's title to the *locus in quo.*

The opinion of the Court was delivered by

ROYCE, J. This action of trespass is brought as well for the erection and continuance of the toll-house and gate, complained of in the former suit, as for that of the bridge itself, with its abutment and piers. It may, therefore, be convenient to speak separately of these two causes of complaint. And first, as to the bridge, with its abutment and piers.

The whole space occupied by the bridge, was part of the turnpike road, until that corporation was dissolved in A. D. 1819; for it cannot be admitted that their neglect to replace the bridge after it was destroyed, in A. D. 1815, operated to extinguish their interest in this particular spot, while they remained entitled to all the rights, and subject to all the liabilities of their grant, in every other part of the road. The building of this bridge, in A. D. 1818, by them, or the White River

*Windsor,*
*February,*
*1826.*

*Lyman*
*vs.*
*Tarr. et al.*

Bridge Company with their assent, could therefore be no trespass to the plaintiff, whose title is expressly made subject to all the rights of the Turnpike Company. It is contended, however, that upon the dissolution of the Turnpike Corporation, in 1819, the *locus in quo,* was discharged from the easement, and that the continuance of the bridge, since that time, is a trespass for which this action will lie. Without deciding whether, in any case, the continuance of the bridge could become a trespass, if lawfully erected at first, it is certain the mere act of building it, being a lawful act at the time, cannot subject these defendants in trespass, and no subsequent act of theirs, either as individuals, or members of the Bridge Company, is shown, to make them answerable for what has since happened. And, besides, were it necessary to determine the character of the turnpike road, since the repeal of the grant, it would probably be considered a publick highway, in which it could not be unlawful to continue a necessary bridge, whether the same was publick or private property. It results, therefore, that as to the bridge, no trespass is shown to have been committed by these defendants.

The trespass in erecting the toll-house and gate, and continuing the same until January 27, 1819, has been satisfied: the former action on the case, against the Company, being equivalent to an action of trespass, against these defendants, as the plaintiff could no have both. It is, therefore, for the continuance of these nuisances after that time, that this action is brought. And the question is, whether this new trespass is imputable to these defendants. When a person, in his own right, and for his own benefit, commits a trespass, by erecting a nuisance on another's land, it is but reasonable that he should remain liable for the continuing injury. And on the other hand, if he committed the original trespass as an agent, and for the benefit of another, the continuance should not be regarded as his act, but that of the principal. In this case, the defendants, though at that time members of the Bridge Corporation, must be taken to have acted, originally, as the servants and agents of the Company. The continuance of the toll-house and gate, ought, therefore, to be deemed the act of the Company, and not of the defendants, as individuals; for they cannot be made liable for what has happened since the commencement of the former suit, except by showing that as individuals or members of the corporation, they have done some act affirming the continuance.

It being our opinion that no trespass is established against the defendants, we have no occasion to consider that part of the case, which relates to the rule of damages.

New trial not granted.

HUTCHINSON, J. being of counsel, did not sit in this cause.

*Charles Marsh* and *Titus Hutchinson,* for the plaintiff.

*Geo. E. Wales, J. H. Hubbard,* and *H. Everett,* for the defendants.