412 F.3d 96
 J. Paul PRESEAULT and Patricia Preseault, Individually, and as partners of 985 Associates, Ltd., Plaintiffs-Appellants,
v.
CITY OF BURLINGTON, VERMONT and State of Vermont, Defendants-Appellees,
No. 04-1154-CV.
 United States Court of Appeals, Second Circuit.
 Argued: January 31, 2005.
 Decided: June 15, 2005.
 
 1
 Christina A. Jensen (Carl H. Lisman, on the brief), Lisman, Webster, Kirkpatrick & Leckerling, Burlington, VT, for Plaintiffs-Appellants.
 
 
 2
 William F. Ellis, McNeil, Leddy & Sheahan, Burlington, VT, for Defendants-Appellees.
 
 
 3
 Before: POOLER, B.D. PARKER, Circuit Judges, CASTEL, District Judge.*
 
 
 4
 CASTEL, District Judge.
 
 
 5
 Plaintiffs-appellants J. Paul and Patricia Preseault are the owners of a fee simple interest in adjoining parcels of land located in Burlington, Vermont. In July 2002, the defendant-appellee City of Burlington (the "City") installed a fiber-optic cable over a portion of the Preseaults' property. The Preseaults commenced this action in the United States District Court for the District of Vermont, contending that the City installed the fiber-optic cable line without just compensation, thereby violating the Takings Clause of the Fifth Amendment to the United States Constitution. Plaintiffs assert a claim under 42 U.S.C. § 1983, and seek monetary and injunctive relief. The district court (J. Garvan Murtha, Judge) granted the defendants' motion for summary judgment and dismissed the case.
 
 
 6
 The district court largely based its ruling on Vermont statutes that govern the placement and maintenance of electric and telecommunications lines within railroad easements. Vt. Stat. Ann. tit. 30 §§ 2513, 2514, and 2515. It construed the statutory right to maintain a line in terms more commonly used for an easement at common law. However, neither the statutes' plain language nor controlling Vermont precedent speaks to whether a statutory right to maintain existing lines has the attributes of a common law easement, an issue that bears directly upon whether the installation of the fiber-optic cable constitutes an uncompensated taking. Because Vermont's law is unsettled and resolution of this question may implicate significant public policy considerations for Vermont, we certify this question to the Supreme Court of Vermont.
 
 I. Historical Background
 
 7
 This lawsuit arises over the use of utility poles that were erected within a once-operative, now-abandoned railroad easement. In 1899, the Rutland-Canadian Railroad Company ("Rutland") acquired rights-of-way in land parcels that comprise portions of the current Preseault estate. Preseault v. United States, 100 F.3d 1525, 1531 (Fed.Cir.1996) (en banc). Rutland laid tracks that operated as a functioning railway line until 1970, when the tracks ceased use for active transport. Id. at 1547.
 
 
 8
 In 1964, a point in time when the railway was operational, Rutland transferred to the State of Vermont all right, title and interest in the railroad easement. This conveyance included an assignment of interest in lease agreements, including some with New England Telephone & Telegraph Co. The railroad's tracks were stripped from the ground in 1975, and the railroad's easement over the parcels was abandoned. Id. at 1549.
 
 
 9
 According to the City's chief administrative officer, the City has maintained utility lines and poles within "the vicinity of plaintiff's property" since at least the 1950s. In 1985, after use of the railway had been abandoned, the State of Vermont entered into a lease agreement with the City of Burlington Light Department that purported to give the City certain rights to the railroad easement, including the right and obligation "to promptly maintain, relocate, repair and renew" electric power lines.
 
 
 10
 In 2002, the City commenced a telecommunications project that involved installing approximately 16.5 miles of fiber-optic cable for the transmission of video, voice, and data services, including cable television service. The project connected City-owned buildings and facilities. As part of this project, in July 2002 the City installed a fiber-optic cable along the utility poles on the Preseaults' property. The cable is located several feet below the crossbars that hold the preexisting lines. The City's chief administrative officer asserts that prior to installing the fiber-optic cable, the City obtained licenses from its electric department and/or Verizon Vermont to attach fiber-optic cable to their poles. Pursuant to Rule 3.707 of the Vermont Public Service Board, any utility that owns a pole must grant "all Attaching Entities" access to any pole or right-of-way in which the utility has an ownership interest.
 
 II. Prior Litigation
 
 11
 The present lawsuit follows more than 20 years of litigation over the Preseaults' ownership and right to exclusive possession of land that once had been subject to the railroad easement. That litigation arose over a public recreational path that was laid down in a portion of the abandoned railroad easement. A brief overview of the Preseaults' previous suits aids in understanding the current dispute over the City's installation of the fiber-optic cable, although the utility poles to which the fiber-optic cable is attached lie outside the boundaries of the recreational path easement for which the Preseaults were compensated in this prior litigation.
 
 
 12
 In 1981, the Preseaults brought a quiet-title action in the Superior Court of Chittenden County, Vermont, alleging that the railroad easement had been abandoned and no longer encumbered their estate as a matter of state property law. See Trustees of the Diocese of Vermont v. Vermont, 145 Vt. 510, 496 A.2d 151, 152 (1985). The Superior Court dismissed the action for lack of subject matter jurisdiction, holding that the Interstate Commerce Commission ("ICC") retained exclusive jurisdiction because it had not authorized abandonment of the railroad route. Id. The Vermont Supreme Court affirmed the dismissal. Id. It held that the lower court correctly concluded that the ICC was vested with plenary oversight of rail carrier operations. Id. at 154.
 
 
 13
 The Preseaults then sought a certificate of abandonment from the ICC, and the State of Vermont intervened, asserting title to the right-of-way in fee simple. State of Vermont and Vermont Railway, Inc. — Discontinuance of Service Exemption — in Chittenden County, VT, 1987 WL 97267, 3 I.C.C.2d 903 (1987). The ICC found that the discontinued railroad line was owned by the State of Vermont, which leased its interest to the City for use as a recreational trail. Id. at 903-04. It held that pursuant to the Rails to Trails Act, 16 U.S.C. 1247(d), unused railroad rights-of-way may be converted into recreational trails, regardless of any reversionary property interests that exist under state law. Id. at 906-08.
 
 
 14
 The Preseaults petitioned this Court for review of the ICC's order, arguing that the Rails to Trails Act exceeded Congress's Commerce Clause power and constituted an unconstitutional taking of private property without just compensation. This Court upheld the constitutionality of the Rails to Trails Act in Preseault v. Interstate Commerce Commission, 853 F.2d 145 (2d Cir.1988). The Supreme Court subsequently upheld the Act as a valid exercise of Congress's Commerce Clause powers, and ruled that before the Preseaults could pursue a Takings Clause claim, they must seek compensation through the procedures required by the Tucker Act, 28 U.S.C. § 1491(a)(1). Preseault v. Interstate Commerce Commission, 494 U.S. 1, 11-19, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990).
 
 
 15
 The Preseaults thereafter filed a Tucker Act claim in the United States Court of Federal Claims. In Preseault v. United States, 27 Fed.Cl. 69 (1992), the Court of Claims concluded that the Preseaults were not entitled to compensation, and granted the government's motion for summary judgment dismissing the action. A three-judge panel of the United States Court of Appeals for the Federal Circuit affirmed the Court of Claims. Preseault v. United States, 66 F.3d 1167 (Fed.Cir.1995). The Federal Circuit reheard the matter and reversed en banc. Preseault v. United States, 100 F.3d 1525 (Fed.Cir.1996) (en banc). With acknowledged reluctance, it examined questions of Vermont property law. Id. at 1534. The Federal Circuit concluded that pursuant to state statutory authority, the railroad's property interest was an easement, not a fee. Id. at 1535. "Thus it is that a railroad that proceeds to acquire a right-of-way for its road acquires only that estate, typically an easement, necessary for its limited purposes." Id. at 1537. The City and Vermont argued that pursuant to a doctrine of "shifting public use," the original railroad easement should include other public purposes, such as the establishment of a recreational trail. Id. at 1541. The Federal Circuit observed that Vermont law had not adopted a theory of shifting public use. Id. at 1541, 1544. "The easements involved here are express easements, meaning that the scope of the easements are set out in express terms, either in the granting documents or as a matter of incorporation and legal construction of the terms of the relevant documents." Id. at 1542. The Federal Circuit concluded that an easement originally granted for the purpose of establishing a railroad did not reasonably contemplate an easement for a recreational bike path. Id. at 1542-43. It held that the possession of the Preseaults' land "for use as a public trail was in effect a taking of a new easement for that new use, for which the landowners are entitled to compensation." Id. at 1550. "When state-defined property rights are destroyed by the Federal Government's preemptive power in circumstances such as those here before us, the owner of those rights is due just compensation." Id. at 1552. The Federal Circuit remanded the action to the Court of Federal Claims to determine the amount of compensation to be awarded to the Preseaults. Id. The Court of Federal Claims then conducted a five-day trial and issued its ruling in a bench decision. It determined that the Preseaults were entitled to compensation in the sum of $234,000, plus interest and fees.[1]
 
 III. Proceedings in the District Court
 
 16
 This action was commenced on July 16, 2002, with the filing of the Preseaults' Complaint. The Complaint identifies the State of Vermont as the successor-in-title to the railroad that held the former right-of-way. It alleges that the City installed the fiber-optic cable across the Preseaults' property over their objections, and asserts that the placement of the cable constitutes a taking without just compensation and a violation of the Preseaults' due process rights.
 
 
 17
 The parties moved for summary judgment. The district court granted the defendants' motion and dismissed the plaintiffs' claims. Preseault v. City of Burlington, No. Civ. 1-02-CV-167, 2004 WL 2732179, at *3 (D.Vt. Feb. 5, 2004). It noted that "resolution of this matter requires application of Vermont law," and based its determination on what it described as a "dispositive" reading of three statutory provisions: sections 2513, 2514 and 2515 to Title 30 of the Vermont Statutes. Id. at *3. The district court held that sections 2513 and 2515 granted the City an unequivocal right to install the fiber-optic cable as part of the prior utility line easement.[2] Id. at *4. Section 2513 states:
 
 
 18
 (a) A company subject to the jurisdiction of the public service board may erect and maintain its telecommunications or electric transmission and distribution lines and facilities along the sides of railroad tracks within the limits of lands owned or held by a railroad on paying reasonable compensation to the railroad. If they cannot agree upon the amount of reasonable compensation, it shall be determined by the transportation board which shall ascertain the compensation.
 
 
 19
 (b) Wireless telecommunications facilities may be erected and maintained within the limits of lands owned or held by a railroad in the same manner as other facilities.
 
 
 20
 Vt. Stat. Ann. tit. 30 § 2513. Section 2515 states:
 
 
 21
 When a person or corporation is about to erect a line of telegraph or telephone wires, in and along a highway within a town, in and along which a line of poles has already been erected by another person or corporation for a similar purpose, the transportation board or selectmen of such town shall have the right to permit and may require the new line to be attached to the poles already standing ....[3]
 
 
 22
 Vt. Stat. Ann. tit. 30 § 2515. The district court held that, "[r]ead together, 30 V.S.A. §§ 2513(b) and 2515 unequivocally grant the City such a right in this case, regardless of the fact that the utility easement arose as a result of a now defunct railway."[4] 2004 WL 2732179 at *4.
 
 
 23
 The district court treated the statutory right as having the characteristics of a common law easement, and cited to Vermont case law on the scope of such an easement. It concluded that summary judgment was appropriate because the burden on the easement was insubstantial as a matter of law. "The fiber optic line at issue is one rather unremarkable wire placed on poles which already support several similar lines.... [A]s a matter of law, the single fiber optic cable at issue does not materially increase the scope of the easement, nor does it impose a new burden on the servient estate." Id.
 
 DISCUSSION
 
 24
 We review a district court's grant of summary judgment de novo, drawing all inferences and resolving all ambiguities in favor of the nonmoving party. See Caruso v. Siemens Business Communications Syst., Inc., 392 F.3d 66, 70 (2d Cir.2004).
 
 
 25
 Since at least 1847, the State of Vermont has had in place a statutory system that grants utilities the power to erect and maintain electrical or communications lines along the State's public highways. See 25 Vt. Comp. Stat. Ch. 98 (1847). We begin our analysis with the language of Vt. Stat. Ann. tit. 30 § 2513(a). Read alone, its terms are sweeping:
 
 
 26
 A company subject to the jurisdiction of the public service board may erect and maintain its telecommunications or electric transmission and distribution lines and facilities along the sides of railroad tracks within the limits of lands owned or held by a railroad on paying reasonable compensation to the railroad.
 
 
 27
 Vt. Stat. Ann. tit. 30 § 2513(a). During the life of a railroad easement, section 2513 allows for the erection of any manner of "telecommunications or electric transmission and distribution lines," a broad category that would include the type of fiber-optic cable disputed in this lawsuit. Here, however, the railroad easement had long ceased to exist at the time of installation of the fiber-optic cable.
 
 
 28
 The Legislature also addressed the right of a utility to maintain an existing line once a railroad easement comes to an end by reason of sale, transfer or mortgage. Section 2514 speaks to the residual right of the utility after such a transfer:
 
 
 29
 A line erected as authorized in section 2513 of this title shall remain the property of such telegraph, telephone or electric light company, and shall not pass by sale, transfer or mortgage made by the railroad corporation, of the lands upon which the line is erected, nor shall the line be liable to attachment or levy of execution against such railroad corporation.
 
 
 30
 Vt. Stat. Ann. tit. 30 § 2514. Vermont had long held that a common law easement may be lost through abandonment. See, e.g., Lyman v. Dorr, 1826 WL 1193, 1 Aik. 217 (Vt.1826). In Proctor v. Central Vermont Public Service Corp., 116 Vt. 431, 77 A.2d 828, 829 (1951), the Supreme Court of Vermont construed a predecessor provision of section 2514 as applying not only to a sale or voluntary transfer, but also to a transfer by reason of abandonment. In Proctor, a plaintiff landowner sued a public service corporation for trespass, claiming that he was damaged by its installation of utility poles and a line to carry electricity. In 1902, land was condemned so that the Rutland Street Railway Company could construct and operate an electric railway. Id. Alongside the tracks, the railway company erected electrical lines to operate its cars and carry electricity for resale. Id. The railroad ceased activity in 1924, and in 1926, its tracks were removed. Id. at 830. The Vermont Supreme Court concluded that, even though the railroad had long ceased operation and its tracks had been removed, the land use "was not confined strictly to railroad purposes, but carried inherent in it rights in favor, among others, of electric light companies. ... Put another way, railroad use encompassed other uses, including electric lines." Id. Proctor held that "when the railroad use is abandoned, the right to maintain a then existing independent electric line continues." Id. (emphasis added).[5]
 
 
 31
 One plausible application of section 2514, as interpreted in Proctor, would mean that when the railroad easement was abandoned in 1975, the city retained rights to maintain lines that existed prior to the abandonment, and only such lines. While the district court did not have reason to reach the issue, the Preseaults argue that the fiber-optic cable is a new line and cannot be categorized as an existing line because the cable is attached several feet below the preexisting lines. Under this interpretation of section 2514, the placement of a new line is an uncompensated taking. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 430, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) ("[P]ermanent occupations of land by such installations as telegraph and telephone lines... are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land."). On the other hand, Vermont may interpret the statutory right as having the attributes of a common-law easement, subject to an increase-in-burden analysis. Cf. Dernier v. Rutland Ry., Light & Power Co., 94 Vt. 187, 110 A. 4, 7 (1920) ("The principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon.").
 
 
 32
 "This Court has long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process." Parrot v. Guardian Life Ins. Co. of Am., 338 F.3d 140, 144 (2d Cir.2003). In light of this unsettled issue of law, as well as this decision's importance to the State of Vermont, we respectfully certify to the Vermont Supreme Court the question: Are the City's rights under section 2514, which remained following the abandonment of the railroad easement pursuant to Proctor, in the nature of a common law easement, or limited to maintaining the lines that existed prior to the abandonment?
 
 
 33
 Vermont law allows for the federal certification of questions of state law directly to the Vermont Supreme Court. Vt. R.App. P. 14(a). Local Rule section 0.27 allows for certification "to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court." 2d Cir. R. § 0.27. The question that we certify presents purely state law issues, controls the outcome of this case, and lacks controlling precedent. We elect respectfully to extend an invitation to the Vermont Supreme Court to address this issue because it directly implicates Vermont statutory provisions that lack sufficient Vermont precedent for us to make a determination with certainty.
 
 
 34
 The panel retains jurisdiction to address this issue, and any additional issues that may need to be reached after the Supreme Court of Vermont has offered its guidance or declined certification.
 
 CONCLUSION
 
 35
 As discussed above, we are reluctant to decide an important question of Vermont law, controlling in the case before us, when there is no clear guidance from Vermont courts or the Vermont legislature. Therefore, the question we certify to the Vermont Supreme Court is:
 
 
 36
 Are the City's rights under section 2514, which remained following the abandonment of the railroad easement pursuant to Proctor, in the nature of a common law easement, or are limited to maintaining the lines that existed prior to the abandonment?
 
 
 37
 The Vermont Supreme Court may, of course, reformulate or expand upon this question as it sees fit.
 
 CERTIFICATION
 
 38
 It is hereby ordered that the Clerk of this Court transmit to the Clerk of the Supreme Court of Vermont a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. The parties are directed to bear equally any fees and costs directed by the Supreme Court of Vermont, including any entry fee required by Vt. R.App. Proc. 3(b)(1).
 
 
 
 Notes:
 
 
 *
 The Honorable P. Kevin Castel, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The bike path easement for which compensation was granted in the Federal Court of Claims occupied a strip of land narrower than the original railroad easement and did not include the land on which the utility poles are placed
 
 
 [2]
 The parties concede that the district court incorrectly described the utility poles as located within the easement for the recreational path. Nevertheless, the district court recognized that the recreational path and the utility lines implicated separate property interests, and analyzed them accordingly
 
 
 [3]
 Under Vermont law, "a railroad is an improved highway."Dessureau v. Maurice Memorials, Inc., 132 Vt. 350, 318 A.2d 652, 653 (1974).
 
 
 [4]
 While the District Court specifically cited Vt. Stat. Ann. tit. 30 § 2513(b), we think that this most likely was a harmless typographical errorSee Fed.R.Civ.P. 61. Section 2513(b) refers to "wireless telecommunications," and is not relevant to the fiber-optic cable in this dispute. The court more likely intended to cite section 2513(a), which it quoted earlier in the opinion and applies to "telecommunications... lines."
 
 
 [5]
 Proctor anchored its analysis in 47 V.S. §§ 9710 and 9711, the predecessors to sections 2513 and 2514, respectively.