2006 VT 63

**J. Paul PRESEAULT and Patricia Preseault, Individually and as Partners 985 Associates, Ltd. v. CITY OF BURLINGTON, VERMONT and State of Vermont**

[908 A.2d 419]

No. 05-236

¶ 1. July 11, 2006. In this litigation, plaintiffs J. Paul Preseault and Patricia Preseault seek to prevent defendant City of Burlington from adding a fiber optic line to existing utility poles and lines that run through their property along a recreation path and former railroad right-of-way. In response to a certified question accepted from the United States Court of Appeals for the Second Circuit pursuant to V.R.A.P. 14, we conclude that the provisions of 30 V.S.A. §§ 2513-2514 confer rights in the nature of a common-law easement with respect to allowing the placement of utility lines along rights-of-way no longer used for railway services. Accordingly, we answer the certified question in the affirmative.

¶ 2. The material facts relevant to this case are not in dispute. The City of Burlington owns and operates a municipal electric utility that has maintained utility poles since the 1950s within an historic railroad right-of-way that crosses the Preseaults' property. In 2002, the City began a telecommunications project that involved installing approximately sixteen and one-half miles of fiber optic cable for the transmission of video, voice, and data services, including cable television service, to connect city-owned buildings and facilities. As part of the project, the City installed a fiber optic cable along the utility poles abutting the Preseaults' property, as permitted by a Public Service Board rule allowing licensed entities access to utility poles. The cable is located several feet below the crossbars that hold the preexisting lines.

¶ 3. The Preseaults filed a complaint in federal district court, asserting that the installation of the cable was an unlawful taking that violated their constitutional rights. The district court dismissed the complaint, ruling that 30 V.S.A. §§ 2513-2515 unequivocally granted the City a right to install the fiber optic cable on existing utility poles. The Preseaults appealed, and the Second Circuit Court

of Appeals certified to this Court the following question, which we accepted for review: "Are the City's rights under section 2514, which remained following the abandonment of the railroad easement pursuant to *Proctor*, in the nature of a common law easement, or limited to maintaining the lines that existed prior to the abandonment?" *Preseault v. City of Burlington*, 412 F.3d 96, 103 (2d Cir. 2005).

¶ 4. As the Second Circuit noted, "[t]he present lawsuit follows more than 20 years of litigation over the Preseaults' ownership and right to exclusive possession of land that once had been subject to the railroad easement." *Id.* at 98. A summary of the historical background and various proceedings between the parties is helpful in understanding the current dispute. In 1899, pursuant to an act of the Vermont Legislature, the Rutland-Canadian Railroad Company acquired a right-of-way to operate a railway line on lands that included property owned by the Preseaults' predecessors-in-title. In 1962, defendant State of Vermont acquired the railroad right-of-way from one railroad company and leased it to another, which continued to operate a railway line. In the 1970s, the railroad discontinued rail service on the land abutting the Preseaults' property and removed all existing track and railroad equipment. In 1981, the Preseaults brought a quiet title action in the superior court alleging that the railroad's easement had been abandoned, and that title to the right-of-way had reverted back to them. The court dismissed the action, holding that the matter was within the exclusive jurisdiction of the federal Interstate Commerce Commission (ICC), and we affirmed. See *Trustees of Diocese of Vt. v. State*, 145 Vt. 510, 515, 496 A.2d 151, 154 (1985).

¶ 5. The Preseaults next sought a certificate of abandonment from the ICC, but, pursuant to the National Trails Sys-

tem Act, the ICC approved an agreement between the State of Vermont and the City of Burlington to use the railroad right-of-way as a bicycle and pedestrian path.* See 16 U.S.C. § 1247(d) (giving ICC authority to encourage preservation of railroad rights-of-way by establishing interim recreational uses). The Preseaults appealed first to the Second Circuit and eventually to the United States Supreme Court, arguing that the National Trails System Act resulted in an unconstitutional taking of their property and was not a valid exercise of Congress's Commerce Clause power. The Supreme Court upheld the constitutionality of the statute, but found it unnecessary to evaluate the merits of the takings claim because the Preseaults had failed to seek compensation from the federal government under the Tucker Act. See *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 17-18 (1990). Accordingly, the Preseaults filed a complaint in the Court of Federal Claims against the United States seeking compensation for the alleged taking. The court denied the claim, as did a three-judge panel of the United States Court of Appeals for the Federal Circuit, but the Federal Circuit reheard the matter and reversed en banc. See *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996). In a split decision, a plurality of the en banc court held that the railroad easement was abandoned in 1975, and that the establishment of a recreation path where the railroad right-of-way had been was a taking that entitled the Preseaults to compensation. *Id.* at 1551. On remand, the court of claims awarded the Preseaults $234,000, plus interest and fees, for the taking.

---

* Apparently, the ICC has never issued a certificate of abandonment with respect to the railroad line at issue in this case.

¶ 6. Meanwhile, in 1987, the State of Vermont and the City of Burlington initiated trespass proceedings in state court seeking damages and injunctive relief based on the Preseaults' excavation and removal of large amounts of soil from the railroad right-of-way that had been maintained by the State and leased to the City. The superior court granted a permanent injunction in 1993, holding that the City had an exclusive possessory interest in the right-of-way, and that the Preseaults' reversionary interest in the right-of-way would vest only when the ICC issued an unconditional certificate of abandonment. We affirmed the superior court's judgment, citing well-settled Vermont law "that the holder of a railroad easement enjoys the right to the exclusive occupancy of the land, and has the right to exclude all concurrent occupancy in any mode and for any purpose." *State v. Preseault*, 163 Vt. 38, 41, 652 A.2d 1001, 1003 (1994).

¶ 7. We now return to the instant dispute. In dismissing the Preseaults' complaint challenging the City's installation of the fiber optic cable, the federal district court ruled that 30 V.S.A. §§ 2513-2515 entitle utilities to maintain easements arising from railroad rights-of-way, and that the Preseaults had failed to raise any disputed fact indicating that the fiber optic line had materially increased the burden of the existing utility easement. The Second Circuit opined that the district court's reasoning treated "the statutory right as having the characteristics of a common law easement," which it deemed to be an unsettled question of Vermont law, and thus certified the following question to this Court: "Are the City's rights under section 2514, which remained following the abandonment of the railroad easement pursuant to *Proctor*, in the nature of a common law easement, or limited to maintaining the lines that existed prior to the abandonment?" *Preseault*, 412 F.3d at 100, 103.

¶ 8. The Preseaults ask this Court to answer the certified question in the negative, arguing that 30 V.S.A. § 2514 provides only a limited statutory right to maintain existing utility lines and cannot be construed as granting a common-law easement that would allow utilities to add new nonburdensome lines. Defendants City of Burlington and the State of Vermont respond that the rights provided by §§ 2513-2514 are in the nature of an easement and are properly construed as such. In the alternative, defendants argue that this Court should reformulate the certified question and reconfirm its determination in prior cases that the railroad right-of-way in question was never formally abandoned as required under federal law, and thus they are entitled to exclusive possession of the historic right-of-way. Central Vermont Public Service Corporation has filed an amicus brief expressing the concern that our resolution of the certified question in this case could affect the right of utilities under 30 V.S.A. § 2502 to construct and maintain transmission lines along town highway right-of-ways without obtaining the consent of adjacent landowners. See *Dessureau v. Maurice Memorials, Inc.*, 132 Vt. 350, 352, 318 A.2d 652, 653 (1974) ("It has long been the law of this State ... that a railroad is an improved highway; and property taken for its use by legislative authority is property taken for public use and is the same as if it were taken for any other highway."). Because our resolution of the certified question resolves the current dispute between the parties, we decline defendants' request that we reformulate the question certified to us.

¶ 9. The instant dispute centers around the statutory rights embodied in 30 V.S.A. §§ 2513-2514. Section 2513(a) allows a utility to "erect and maintain its telecommunications or electric transmission and distribution lines and facilities along the sides of railroad tracks within

the limits of lands owned or held by a railroad on paying reasonable compensation to the railroad." Section 2514 provides further, in relevant part, that a line erected under § 2513 "shall remain the property of [the utility], and shall not pass by sale, transfer or mortgage made by the railroad corporation, of the lands upon which the line is erected." In *Proctor v. Central Vermont Public Service Corp.*, 116 Vt. 431, 77 A.2d 828 (1951), the case cited by the Second Circuit in its certified question, this Court construed the nearly identical predecessor statutes to §§ 2513-2514. In that case, a street railway company had secured by condemnation in 1902 the right to use land for railway purposes. The defendant utility obtained from the railway company a right-of-way for electric lines and poles. The railway tracks were torn up in 1926. Twenty-three years later, the plaintiff landowner filed an action for trespass against the utility for erecting and maintaining electric transmission lines. The issue was whether the utility's right-of-way terminated when the railway tracks were removed. This Court held that the aforementioned statutes made "the electric line the permanent property of the electric company independent of the railroad use," thereby giving the electric company "the right to maintain a then existing independent electric line." *Proctor*, 116 Vt. at 434, 77 A.2d at 830.

¶ 10. In so holding, the Court reasoned as follows:

> [Under the statute,] [t]he railroad use ... was not confined strictly to railroad purposes, but carried inherent in it rights in favor, among others, of electric light companies. These rights might or might not come into actual physical being at a later period. Put another way, railroad use encompassed other uses, including electric lines.

Since this is so, the [land-owner's] predecessor in title was entitled to show and receive damages for the full use to which the condemned property might be put by the appropriation, not only railroading but also any other statutory use, electric lines included.

The compensation paid in the condemnation proceedings to the [landowner's] predecessor for railway use was full indemnity for that use and all the other uses which the statute of the day included or encompassed therein. The Rutland Street Railway Company having paid the then owner of the land for the right of way now owned and used by the [utility], the [utility] is under no obligation, either legal or equitable, to pay this [landowner] therefor a second time.

*Id.* at 433-34, 77 A.2d at 830 (citations omitted).

¶ 11. This reasoning indicates that the Legislature intended the predecessor statutes of §§ 2513-2514 to allow utilities to provide electric and telecommunication services along railroad rights-of-way even after the railroad's abandonment of the rights-of-way because the railroad is presumed to have already compensated adjoining landowners for all of the permitted uses, including the installation and maintenance of electric and telecommunication lines — even if those uses came into being at a later time. Nevertheless, the Preseaults argue that the statutes allow utilities only to maintain existing lines. In making this argument, they focus on the statement in *Proctor* that "when the railroad use is abandoned, the right to maintain a *then existing* independent electric line continues." *Id.* at 434, 77 A.2d at 830 (emphasis added).

This statement is correct and consistent with the facts of *Proctor*, but does not necessarily imply that utilities may never add lines to existing poles.

¶ 12. Indeed, the language of the decision quoted above suggests the contrary. Under the reasoning in *Proctor*, the statutory right provided by §§ 2513-2514 and predecessor statutes is in the nature of an easement in the sense that the right entitles utilities to use the railroad right-of-way in a manner that does not materially burden the landowner beyond what was originally intended by the conveyance or condemnation of the right-of-way. That does not suggest that telecommunication lines other than telegraph or telephone lines are foreclosed if the original statute referred only to the latter type of lines. Rather, it means that the intrusion must be generally of the type originally contemplated — in this case, telecommunication or electric lines — and must not materially burden the landowner beyond what was intended. See *Dernier v. Rutland Ry., Light & Power Co.*, 94 Vt. 187, 194, 110 A. 4, 7 (1920) ("The principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon."). This analysis is consistent with this Court's position that §§ 2513-2514 must be construed broadly to avoid anomalous results and to realize the legislative purpose underlying the statutes "to minimize the amount of land condemnation and maximize the effective use of land taken, consistent with the operations involved." *Delaware & Hudson Ry. v. Central Vt. Pub. Serv. Corp.*, 134 Vt. 322, 324, 360 A.2d 86, 88 (1976).

¶ 13. As indicated in the cases cited above, the plain intent of the Legislature in enacting §§ 2513-2514 and predecessor statutes is to allow utilities to continue to provide electric and telecommunications services within railroad rights-of-way

even after railroad operations cease. Cf. *Davis v. MCI Telecommunications Corp.*, 606 So. 2d 734, 736-37 (Fla. Dist. Ct. App. 1992) (ruling that utility had right to install fiber optic cable along abandoned railroad bed without compensating owners of underlying land, and noting that historically State of Florida and United States Congress required railroads with right-of-way passage to make telecommunications lines and telegraph facilities available for governmental, commercial, and all other purposes). This statutory right is in the nature of an express easement and thus is subject to an increase-in-burden analysis under the common law. Interpreting the statutory right as an easement strikes the appropriate balance between the interests of utilities and property owners. Utilities may continue to use the right-of-ways for their intended purposes so long as the uses do not materially increase the burden for which the landowners or their predecessors-in-title have already been compensated.

*The question certified by the United States Court of Appeals for the Second Circuit in Preseault v. City of Burlington, 412 F.3d 96, 103 (2005), is answered in the affirmative.*

Motion for reargument denied August 18, 2006.