08-5603-cv
Hunt Construction Group, Inc. v. Brennan Beer Gorman/Architects, P.C.

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued:    Dec. 21, 2009          Question Certified:    May 24, 2010)

Docket No. 08-5603-cv

HUNT CONSTRUCTION GROUP, INC.,

*Plaintiff-Appellant*,

-v.-

BRENNAN BEER GORMAN / ARCHITECTS, P.C.; WILSON ASSOCIATES; S. DESIMONE CONSULTING ENGINEERS, LLC; COSENTINI ASSOCIATES, INC.,

*Defendants-Appellants*.

Before: CALABRESI and POOLER, *Circuit Judges*, and KAHN, *District Judge*.[*]

Plaintiff general contractor brought claims of negligence and negligent misrepresentation against Defendant design professionals, over allegedly late and erroneous delivery of professional services as part of the construction of a resort. Each party had a contract with the resort's owner, but did not contract with each other. The District Court (Murtha, *Judge*) dismissed the suit under Fed. R. Civ. P. 12(b)(6), holding that the claims were barred by Vermont's economic loss doctrine. Plaintiff alleges that the District Court erred in dismissing its claims because (1) its claims fall under the special relationship exception to the economic loss doctrine, and (2) the economic loss doctrine does not apply to claims for negligent misrepresentation. Because these contentions involve open questions of Vermont state law, we certify both questions to the Vermont Supreme Court.

---

[*] The Honorable Lawrence E. Kahn, United States District Court for the Northern District of New York, sitting by designation.

STEVEN G.M. STEIN (Joel J. Rhiner and Jean M. Gallo, *on the brief*), Stein, Ray & Harris, LLP, Chicago, Ill., *for Appellant*.

MICHAEL J. VARDARO, Zetlin & De Chiara LLP, New York, N.Y., *for Appellees* Brennan Beer Gorman / Architects, P.C.; S. DeSimone Consulting Engineers, LLC, and Cosentini Associates, Inc.

JAMES M. COOLEY, Heilmann, Ekman & Associates, Inc., Burlington, Vt., *for Appellee* Wilson & Associates, LLC.

---

PER CURIAM:

Plaintiff general contractor brought claims of negligence and negligent misrepresentation against Defendant design professionals, over allegedly late and erroneous delivery of professional services as part of the construction of a resort. Each party had a contract with the resort's owner, but the parties had no contract with each other. The District Court (Murtha, *Judge*) dismissed the suit under Fed. R. Civ. P. 12(b)(6), holding that the claims were barred by Vermont's economic loss doctrine. Plaintiff alleges that the District Court erred in dismissing its claims because (1) its claims fall under the special relationship exception to the economic loss doctrine, and (2) the economic loss doctrine does not apply to claims for negligent misrepresentation. Because these contentions involve open questions of Vermont state law, we certify two questions to the Vermont Supreme Court.

**I.    Background**

*A.    Factual Background*

Spruce Peak Realty, LLC ("Owner" or "Spruce Peak") planned to build a resort hotel and spa ("the Hotel"). It contracted with Plaintiff-Appellant Hunt Construction Group, Inc. ("Plaintiff" or "Hunt") as its general contractor. It contracted with the various Defendants-Appellees (collectively, "Defendants" or the "Design Team") for professional services: architectural design from Brennan Beer Gorman / Architects, P.C.; structural engineering from S. DeSimone Consulting Engineers, LLC; and mechanical, electrical, and plumbing engineering from Cosentini Associates, Inc.[2]

Plaintiff alleges that Defendants were negligent in performing their professional services. To wit, Plaintiff claims that Defendants were late in delivering their drawings; that their drawings were incomplete and contained errors and omissions; and that they failed to respond promptly and accurately to requests for information. Based on these allegations, Plaintiff filed a complaint in the District Court for the District of Vermont alleging negligence and negligent misrepresentation on the part of each Defendant, and stating that Plaintiff had "suffered damages in excess of $75,000" as a result. J.A. 10-25.

*B. Contractual Background*

Plaintiff's contract with Spruce Peak (the "Construction Contract") incorporated the documents due from the Design Team as "Project Construction Documents." J.A. 2. According to Plaintiff, "[c]ontrary to the Construction Contract, the Project Construction Documents were not completed and delivered to Hunt on August 27, 2005." J.A. 3.

---

[2] At the time of oral argument, a fourth firm, Wilson Associates ("Wilson"), was among the Defendant-Appellees. After oral argument, however, Hunt and Wilson settled and stipulated to the dismissal of Wilson from this appeal.

3

The Construction Contract laid out procedures for dealing with cost overruns. Specifically, the contract required Plaintiff to "notify Spruce Peak of any 'errors, omissions or discrepancies in the Plans, Specifications or other Contract Documents'" so that Plaintiff could seek a remedy from Spruce Peak. J.A. 34, 89. Plaintiff was then entitled to additional compensation, paid by Spruce Peak, for such cost overruns or delays. Plaintiff apparently took advantage of these procedures to increase the Guaranteed Maximum Price ("GMP") of the Construction Contract from just below $80 million to just below $97 million.

C.      *Defendants' Motion to Dismiss and Plaintiff's Response*

Defendants moved to dismiss the complaint, arguing that Plaintiff's claims were barred by the economic loss doctrine. Although they did not dispute that they were licensed professionals and that they provided professional services, they contended that, under Vermont law, the professional services exception does not apply "in the absence of contractual privity between a plaintiff and defendant." Supp. A. 11.

Plaintiff responded that contractual privity is not a prerequisite of the professional services exception. Rather, it argued, "the professional licensure of the defendant . . . and the foreseeability of the plaintiff's injury" are "the only two factors" that the Vermont Supreme Court has "endorsed as determinative." Supp. A. 27. Both of these factors, Plaintiff argued, were present: Defendants were professionally licensed, and "it was foreseeable that Hunt would be injured if the Defendants did not perform their contractual duties with the degree of skill and care required of professionals in their respective fields" because "their contractual obligations to the Owner were inextricably intertwined" with Hunt's. Supp. A. 27-28.

D.      *The District Court's Dismissal of the Complaint*

4

The District Court granted Defendants' 12(b)(6) motion in its entirety.[3] *Hunt Constr. Group, Inc. v. Brennan Beer Gorman / Architects, P.C.*, No. 1:08-CV-65, 2008 U.S. Dist. LEXIS 93754 (D. Vt. Nov. 3, 2008). It first explained the background and rationales of the economic loss doctrine. It then stated that the "'key' factor" in a professional services analysis "is the relationship between the parties." *Id.* at *6 (citing *EBWS, LLC v. Britley Corp.*, 181 Vt. 513, 524-25 (2007)). The professional services exception applies, the Court found, only if "there is 'a duty of care independent of any contractual obligations.'" *Id.* at *7 (quoting *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316 (2001)). Because Defendants' only duties here were created by their contracts with Spruce Peak, the Court concluded, the professional services exception did not apply, notwithstanding Defendants' professional licensure and the alleged foreseeability of Plaintiff's injury. *Id.* at *7-9.

As to Plaintiff's second claim, the District Court held that "[t]he policy considerations underlying Vermont's economic loss rule apply equally to tort actions for negligent [mis]representation," and accordingly found them barred. *Id.* at *15. The District Court cited two District of Vermont cases for support, but did not cite or discuss any state court precedents. *Id.*

**II.     Discussion**

*A.     Standard of Review*

The Second Circuit reviews the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and

---

[3] Although the District Court's ruling is styled a "Ruling on Motions for Summary Judgment," the text of the ruling makes clear that the Court intended to grant Defendants' 12(b)(6) motion, and none of the parties refers to the ruling below as one for summary judgment.

drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

*B.      Certification Standard*

Vermont law allows for the federal certification of questions of state law directly to the Vermont Supreme Court. Vt. R. App. P. 14(a); *see Doe v. Newbury Bible Church*, 445 F.3d 594, 596 (2d Cir. 2006) (per curiam). Our circuit's rules permit us to certify questions of law to the highest court of a state. 2d Cir. R. 27.2; *see Preseault v. City of Burlington*, 412 F.3d 96, 102 (2d Cir. 2005). In considering whether to certify a question, we look at "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007).[4]

*C.      The Economic Loss Rule*

1.      Applicable Law

Vermont has adopted the economic loss rule, which prohibits recovery under tort for economic losses which are not also accompanied by tangible, physical harm. *See Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 421 (1995) (citing Prosser & Keeton on The Law of Torts § 92, at 656-57 (5th ed. 1984)). As the Vermont Supreme Court has put it, "[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." *Springfield*

---

[4] Not all of our cases mention "the importance of the issue to the state" as a factor. *See, e.g.*, *Preseault*, 412 F. 3d at 102 ("The question that we certify presents purely state law issues, controls the outcome of this case, and lacks controlling precedent."). Presumably this is because the state court to whom the question is certified, in deciding whether to accept certification, can best evaluate that for itself.

6

*Hydroelectric*, 172 Vt. 311 at 314 (internal quotation marks omitted) (alteration in original). The rule is intended to maintain the distinction between tort law and contract law, as "[c]ontract principles . . . are generally more appropriate for determining claims for consequential damage that parties have, or could have, addressed in their agreement." *Id.* (internal quotation marks omitted). "[T]he economic-loss rule serves to maintain the boundary between contract law, which is designed to enforce parties' contractual expectations, and tort law, which is designed to protect citizens and their property by imposing a general duty of reasonable care." *Hamill v. Pawtucket Mut. Ins. Co.*, 179 Vt. 250, 254 (2005).

Vermont recognizes an exception to the economic loss rule where "the parties have a special relationship, which creates a duty of care independent of contract obligations." *EBWS*, 181 Vt. at 524. In particular, the Vermont Supreme Court has suggested, a special relationship may exist where one party has a "professional duty" to the other. *Id.* This analysis, the state court has said, does not turn on "whether one is licensed in a particular field . . . ; rather, the determining factor is the type of relationship created between the parties." *Id.* at 524-25. In an earlier case discussing (but not then adopting) the special relationship exception, Vermont had noted that other courts require a "special relationship . . . sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor"; this "turns on whether there is a duty of care independent of any contractual obligations." *Springfield Hydroelectric*, 172 Vt. at 316 (internal quotation marks and emphasis omitted).

Although *EBWS* held that a professional services exception exists (and the parties do not contest the existence of this exception), we know of no case in which the Vermont Supreme

7

Court has actually found the exception to apply. In *EBWS*, the court found that the services provided by the defendant were "the services of a contractor not a professional architect." *Id.* at 525; *see also Wentworth v. Crawford & Co.*, 174 Vt. 118, 127 (2002) (plaintiff failed to "identify any professional standards to which entities like [the defendant] must adhere"). In *Springfield Hydroelectric*, the first Vermont case discussing the possibility of a special relationship exception, the court said, "neither privity of contract, nor a special relationship, exist[ed] between appellants and appellees which would permit a finding of duty on the part of appellees." 172 Vt. at 316. In that case, hydroelectric facilities had sued employees of a power exchange for their allegedly negligent administration of a power purchase agreement; despite defendants' "complex and highly specialized responsibilities, the law impose[d] no special duty upon them for the purpose of a negligence action." *Id.* at 317. And in *Hamill*, the Vermont Supreme Court found that the economic loss doctrine barred a suit by a homeowner against the independent adjusters hired by the homeowner's insurer to investigate the homeowner's claim. The court stated that "public policy considerations do not favor creating a separate duty on the part of independent adjusters that would subject them to common-law tort actions by insureds who have suffered economic loss as the result of allegedly mishandled claims." 179 Vt. at 257. But, in reaching its result, the court never mentioned the special relationship or professional services exceptions and their possible relevance to the case.

Other state courts applying the professional services exception have split on its role when parties share a mutual contracting party, but do not themselves contract with one another. Several state high courts have found such actions barred. The Colorado Supreme Court, for example, has found that a "duty of care . . . memorialized in . . . contracts" does not suffice to

8

escape the economic loss rule; rather, a plaintiff must show a "duty independent of the interrelated contracts." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2005). Accordingly, it barred a claim by a subcontractor on a construction project against (a) a licensed engineer who designed plans and specifications that the subcontractor was required to follow, and (b) a company that was hired to inspect the construction and ensure that the engineer's plans and specs were followed. *Id.* at 67. At least nine other states have adopted similar rules.[4]

On the other hand, a number of state high courts have held that a contractor *can* sue a design professional in negligence for purely economic losses. As the West Virginia Supreme Court put it,

> [a] design professional (e.g. an architect or engineer) owes a duty of care to a contractor, who has been employed by the same project owner as the design professional and who has relied upon the design professional's work product in carrying out his or her obligations to the owner, notwithstanding the absence of privity of contract between the contractor and the design professional, due to the special relationship that exists between the two. Consequently, the contractor may, upon proper proof, recover purely economic damages in an action alleging professional negligence on the part of the design professional.

*E. Steel Constructors, Inc. v. City of Salem*, 209 W. Va. 392, 401 (2001). And, at least five other state courts allow suits by contractors against design professionals with whom they were not in contractual privity.[5]

---

[4] *See Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 89 (Nev. 2009) (compiling and concurring with cases from Hawaii, Illinois, New Hampshire, Ohio, Utah, and Wisconsin); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wash. 2d 816, 823 (1994) ("[T]he economic loss rule does not allow a general contractor to recover purely economic damages in tort from a design professional."); *Blake Constr. Co. v. Alley*, 233 Va. 31, 34 (1987) ("The architect's duties both to owner and contractor arise from and are governed by the contracts related to the construction project. While such a duty may be imposed by contract, no common-law duty requires an architect to protect the contractor from purely economic loss.").

[5] *See Tommy L. Griffin Plumbing & Heating Co. v. Jordon, Jones & Goulding, Inc.*, 320 S.C. 49, 56 (1995); *Jim's Excavating Serv., Inc. v. HKM Assocs.*, 265 Mont. 494, 506 (1994);

9

2.      Discussion

Vermont has not definitively stated whether professionals have a duty to other contractors on a multi-party project, nor has it really considered an analogous case. Of the Vermont cases in this area, *Hamill* is the closest, but the Supreme Court did not discuss the special relationship exception anywhere in its opinion. There is certainly language in Vermont opinions that supports Defendants' reading. *See Springfield Hydroelectric*, 172 Vt. at 316 ("The underlying analysis turns on whether there is a duty of care independent of *any* contractual obligations." (emphasis added) (internal quotation marks and emphasis omitted); *see also EBWS*, 181 Vt. at 525 ("[T]here was no special duty of care created *beyond the terms of the construction contract* and no exception to the economic-loss rule applies." (emphasis added)). And Defendants' interpretation is consistent with the broad rationale underlying Vermont's acceptance of the economic loss rule. *See EBWS*, 181 Vt. at 524 ("[I]n contract the parties self-impose duties and protect themselves through bargaining."); *see also Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wash. 2d 816, 827 (1994) ("The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract." (quoted in *EBWS*, 181 Vt. at 525)). The fact that Hunt apparently had (and made use of) significant contractual remedies with Spruce Peak—which presumably had contractual remedies of its own with Defendants—supports the

---

*Mid-W. Elec. v. DeWild Grant Reckert & Assocs. Co.*, 500 N.W.2d 250, 254 (S.D. 1993); *Forte Bros. v. Nat'l Amusements, Inc.*, 525 A.2d 1301, 1303 (R.I. 1987); *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187 (1984), *abrogated on other grounds by Gipson v. Kasey*, 214 Ariz. 141 (2007). At one point, it could be said that this permissive rule was the majority position, *see Mid-W. Elec.*, 500 N.W.2d at 253, but it appears that it is no longer so.

view that a negligence suit is inappropriate here for all the reasons it is also inappropriate in the typical, two-party situation.

But although Defendants present strong arguments for their desired rule, Plaintiff's reading is also compatible with Vermont precedents. *EBWS*, in referring to duties "created beyond the terms of the construction contract," *id.* at 525, was speaking only of a contract between the plaintiff and the defendant; there is no hint that the same rule would apply where the parties did not share contractual privity. The reference in *Springfield Hydroelectric* to "a duty of care independent of *any* contractual obligations," 172 Vt. at 316 (emphasis added and omitted), lacks the context necessary to allow us to know whether the court meant any contractual obligations of the defendant, *period*, or rather any contractual obligations *between the parties*. And it seems unlikely that Vermont intended to give a party the power to get out of negligence liability for economic loss to any conceivable injured party simply by making a deal, a contract with a possibly unrelated third party.

Given that there is a well-defined and fairly close split among the states on this issue, and that Vermont has not definitively chosen a side, we deem it appropriate to give the Vermont Supreme Court the opportunity, if it wishes, to settle the issue. The question "presents purely state law issues, controls the outcome of this case, and lacks controlling precedent." *Preseault*, 412 F.3d at 102. And we consider the issue sufficiently important, *see O'Mara*, 485 F.3d at 698, given that such cases involve multimillion dollar contracts and that the Vermont Supreme Court has considered similar cases at least four times in the last eight years. Moreover, the contracts at issue here are modified form contracts used extensively in the construction industry, and the

11

outcome in this case will likely affect many similar agreements. Accordingly, we certify the following question:

> Does the economic loss doctrine bar a contractor from seeking purely economic damages against design professionals who allegedly provided negligent professional services in violation of the design professionals' contractual obligations with a mutual counterparty?

*D.     Negligent Misrepresentation*

1.     Applicable Law

The Vermont Supreme Court has adopted the definition of negligent misrepresentation given in the Restatement (Second) of Torts § 552(1):

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Limoge v. People's Trust Co.*, 168 Vt. 265, 268-69 (1998).  The Vermont court has repeatedly applied this section in negligent misrepresentation cases that sought only economic damages. *See id.*; *see also Pearson v. Simmonds Precision Prods., Inc.*, 160 Vt. 168, 173-74 (1993); *Silva v. Stevens*, 156 Vt. 94, 101, 108 (1991); *Kramer v. Chabot*, 152 Vt. 53, 58 (1989).  But, in allowing such cases to proceed, the court has not discussed the economic loss doctrine at all.

Despite these Vermont state precedents, the federal District Court for the District of Vermont, applying the economic loss doctrine, has barred negligent misrepresentation claims involving only economic loss on three occasions, including the instant case.  *See Hunt Constr. Group*, 2008 U.S. Dist. LEXIS 93754, at *15-16; *Vt. Country Foods, Inc. v. So-Pak-Co, Inc.*, No. 1:02-CV-83 (D. Vt. Jul. 28, 2004) (unpublished order), *aff'd*, *Vt. Country Foods, Inc. v. So-Pak-*

*Co.*, No. 05-3429, 170 Fed. Appx. 756 (2d Cir. 2006) (summary order); *City of Burlington v. Zurn Indus.*, 135 F. Supp. 2d 454, 461-62 (D. Vt. 2001).

2.    Discussion

The District Court's resolution of the conflict between Vermont's seemingly broad recognition of the tort of negligent misrepresentation and its adoption of the economic loss doctrine is based, as the Court wrote in this case, on the notion that "[t]he policy considerations underlying Vermont's economic loss rule apply equally to tort actions for negligent representation." *Hunt Constr. Group*, 2008 U.S. Dist. LEXIS 93754, at *15. But while this is an understandable resolution of the issue, it runs directly counter to the result in four Vermont Supreme Court cases. For each of the cases in the *Limoge* line dealt with purely economic losses, and each found no bar to recovery.

As Plaintiff argues, "[i]f the economic loss rule is as pervasive in Vermont's jurisprudence as [Defendants] assert[], the Supreme Court of Vermont would not repeatedly award economic damages for negligent misrepresentation, knowing the economic loss rule would bar such an award." Appellant's Reply Br. 15-16. We do not follow Plaintiff to its conclusion that negligent misrepresentation claims are necessarily exempt from the economic loss doctrine. After all, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).[6] But the cases *are* there and cannot

---

[6] Defendants argue that the principle expressed in *Webster* is dispositive in this case, and that the *Limoge* line can be ignored entirely. But that principle applies to the cases on which Defendants rely just as much as it applies to those on which Plaintiffs rely: the application of the economic loss rule to negligent misrepresentation claims is, at most, a question merely lurking in *EBWS* and *Springfield Hydroelectric*, and not one that the Vermont Supreme Court has yet decided explicitly.

simply be ignored. In view of their presence, on the one hand, and the lack of *any* discussion in them of the economic loss rule, on the other, we are left unable to conclude what Vermont law is as to purely economic loss caused by negligent misrepresentation.

Accordingly, we certify the following question:

Does the economic loss doctrine apply to claims of negligent misrepresentation?

**III.** **Conclusion**

For the foregoing reasons, we CERTIFY two questions to the Vermont Supreme Court:

(1)　Does the economic loss doctrine bar a contractor from seeking purely economic damages against design professionals who allegedly provided negligent professional services in violation of the design professionals' contractual obligations with a mutual counterparty?

(2)　Does the economic loss doctrine apply to claims of negligent misrepresentation?

We reserve judgment over the case until the Vermont Supreme Court has either declined certification or ruled on these questions.