*Fairlee v. Forcier Aldrich & Associates*, 211-12-17 Oecv (Harris, J., Jan. 14, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Orange Unit | Docket No. 211-12-17 Oecv |

---

## Town of Fairlee vs. Forcier Aldrich & Associates e

---

## ENTRY REGARDING MOTION

Count 1, Breach of Contract - Business (211-12-17 Oecv)
Count 2, Breach of Contract - Business (211-12-17 Oecv)
Count 3, Breach of Contract - Business (211-12-17 Oecv)
Count 4, Breach of Contract - Business (211-12-17 Oecv)
Count 5, Breach of Contract - Business (211-12-17 Oecv)
Count 6, Breach of Contract - Business (211-12-17 Oecv)
Count 7, Breach of Contract - Business (211-12-17 Oecv)
Count 8, Breach of Contract - Business (211-12-17 Oecv)

| | |
|---|---|
| Title: | Motion for Summary Judgment (Motion 5) |
| Filer: | Engineering Ventures, Inc |
| Attorney: | David D. Aman |
| Filed Date: | September 24, 2018 |

Response filed on 10/22/2018 by Attorney William H. Meub for Plaintiff Town of Fairlee
Response filed on 11/13/2018 by Attorney Evan A. Foxx for Plaintiff Town of Fairlee

| | |
|---|---|
| Title: | Motion for Enlargement of Time (Motion 7) |
| Filer: | Town of Fairlee |
| Attorney: | William H. Meub |
| Filed Date: | November 16, 2018 |

No response filed

### Introduction

A thicket of motions and memos were filed arising out of the 9/24/18 Engineering Ventures, Inc. ("EVI") motion for summary judgment. Similar to Newstress, Inc., EVI has no contractual privity with the Town, and seeks to challenge the existence of triable claims against it by the Town.

EVI's motion for summary judgment, for its statement of undisputed facts, simply recites the Town's complaint allegations and asks to court to dismiss the negligence count against it under the economic loss rule.

In response the Town filed its opposition memo, providing as proffered additional undisputed or disputed facts, relatively brief affidavits of its town manager and its consulting expert.

In its reply brief, EVI essentially restated its legal arguments and challenged the alleged disputed material facts contained in the Town's filing. EVI argued those offered submissions were not based on sufficient first hand knowledge, or contained mere conclusory or legal statements, and should not be considered under Rule 56 in deciding EVI's motion.

This in turn led to the Town's 11/16/18 Rule 56(e)(1) motion for time to supply additional material facts in support of its summary judgment motion. No timely opposition or response memos were fled to this motion. The court had not as of yet ruled on the motion, and on 12/13/18 the Town filed an extensive supplemental opposition materials filing.

The court notes that since EVI filed its motion for summary judgment the Town has sought and permission to file its second amended complaint. The court recently granted that motion and considers that complaint version in issuing this opinion. The legal arguments pertinent to EVI's motion for summary judgment are not effected by the revisions to the complaint, which as to EVI largely reflects alleged additional facts involving the negligence claim and/or as to claimed damages. Pertinent factual support for those assertions are contained in the Town's supplemental summary judgment filing and would be available to the court for consideration of the summary judgment motion, regardless of the extent of the detail in the complaint's factual allegations. As parties resisting summary judgment motions cannot simply rest on their factual allegations, and simple or detailed factual allegations both suffice for pleading purposes, the filing of the more detailed second amended complaint do not materially impact the court's determination of EVI's motion.

The court will assume EVI's references to aspects of the complaint (from the time it filed its motion) pertain to the second amended complaint. The court is not going to put the parties through having EVI make formal, obvious revisions to its motion and the arguments made there.

The court next turns to the described motions.

A) Motion to Enlarge Time and Allow Supplemental Materials Filings

The court will allow and consider the Town's supplemental materials in deciding this motion for a few reasons. First, EVI filed no opposition to the motion. Rule 78(b) states a party "opposed to the granting of a written motion shall file a memorandum in opposition thereto" within the prescribed time period. A perhaps overly broad interpretation of this rule would infer failure to file an opposition memo means the opposing party does not oppose the motion. In any event if EVI opposes the motion it has not expressed such a view.

Second, Rule 56(e)(1) allows the court to "give an opportunity to properly support or address a fact". The present rule perhaps countenances some leniency as compared to old Rule 56's subsection that required a non-movant's affidavit and statement of specific reasons why the court should allow more discovery before ruling on a summary judgment motion.

Third, it is fair to give the Town the right to present its best facts. The prior affidavits did appear to have some conclusory statements and raise issues of personal knowledge. The court can issue a better and fairer ruling by receiving the facts, rather than summarized characterizations of some facts. No prejudice appears to EVI by the fact the second filing, just under a month after the first, has a more robust statement of the facts the Town deems to create triable issues of fact.

The motion to enlarge time to file, and to allow, supplemental materials is GRANTED.

## MOTION FOR SUMMARY JUDGMENT

EVI's motion for summary judgment, for the motion purposes only, does not contest whether there may be contested facts that could support a conclusion it was negligent. EVI instead argues the negligence claim against it in the second amended complaint must be dismissed under the economic loss rule. This impacts which facts, and what level of factual detail, are pertinent to the motion issues.

In reviewing the Town's supplemental materials (Documents A to P) and statement of additional material facts the court has used the statement of material facts to guide the court to the pertinent facts. In evaluating a summary judgment motion, the court is required to consider "only the materials cited in the required statements of facts." V.R.C.P. 56(c)(3). It was plaintiff's responsibility to bring items in the record to the court's attention to establish a genuine issue of material fact. See *Webb v. Leclair*, 2007 VT 65, ¶ 6, 182 Vt. 559 (mem.) (explaining that it is not the court's responsibility to sift through the evidence "to find contested and uncontested facts"); However, the court has noted some portions of the provided materials obviously pertinent to the summary judgment motion – such as the Aldrich/EVI Agreement terms.

Viewing the supported facts in the light most favorable to the Town, the facts pertinent to the motion include:

Legal Analysis
1. The Town of Fairlee ("Town") contracted (reportedly in 2003) with Forcier, Aldrich and Associates, Inc. (later known as Aldrich & Elliott, P.C.), and collectively referred to as "Aldrich" to help design a Water Storage Tank ("WST") for the Town. This overall project is referred to as the "WST Project". The WST, as designed, could hold as much as 275,000 gallons of water for municipal water system uses, including potable water supply and fire protection.

3

2. If that agreement was in writing, no party has provided the court with a copy of that Town/Aldrich contract, despite its obvious usefulness to the motion issues. Given that Aldrich was entering subcontracts with EVI as early as November 2002 (see below) the court suspects the Town/Aldrich agreement preceded 2003.

3. As described in depositions and affidavits, and documents provided, under the Town/Aldrich agreement, Aldrich was hired to perform preliminary engineering, final design, construction phase services for the WST Project.

4. As part of its work for the Town, Aldrich subcontracted with Engineering Ventures, Inc. ("EVI"). A bilaterally signed written contract exists between EVI and Aldrich, dated 12/9/02 (date of Aldrich's acceptance of the EVI signed contract proposal) (Town Supplemental filing, Exhibit G). (The "Aldrich/ EVI Agreement").

5. Under the Aldrich/EVI Agreement terms EVI provided certain professional engineering services to Aldrich for the WST Project for $7,500. The covered work included in pertinent part analysis and design of structural concrete tanking framing and foundations; attendance at design meetings; and preparation of specifications for the described EVI portion of the work. Certain other additional services were available by request and agreement, for additional charge.

6. The Aldrich/ EVI Agreement had a provision as to shop drawing review, to the effect that shop drawing review or comments by EVI was not intended to "relieve contractor" from compliance with specifications or drawings, but only serve as a check for general conformance with the design concept of the project and general compliance with information given in the contract documents. It stated other duties the contractor would be responsible for.

7. The Aldrich/EVI Agreement states that the relationship between Aldric and EVI is that such that EVI was serving as an independent contractor, and not a partner or agent of Aldrich for any purpose.

8. The Aldrich/EVI Agreement terms included terms that "[u]nless otherwise specifically stated, any information, documents, records, data, interpretations, or opinions given to [Aldrich] by [EVI] in the course of performance of the WORK shall be for [Aldrich's] sole use and benefit only in connection with [the WST Project] and the same is not intended to be used or relied upon by [Aldrich] for any other purpose not is it intended to benefit or be relied upon by any third party." The agreement called for use of change orders for additional services.

9. As EVI performed work for the WST Project, EVI reviewed structural items for Aldrich which it relied on, and EVI's employee John Higgins stamped certain drawings as engineer of record and needed to be licensed as an engineer in Vermont to do so.

10. EVI designed structural elements of the WST, knowing Aldrich would rely on that design and not review EVI's structural calculations. EVI's engineers had the structural engineering expertise that Aldrich's engineers lacked, but could provide to the Town by subcontracting with EVI to provide the services for the WST Project.

4

11. EVI engineers in performing the structural engineering design and review aspects of the project, to perform those duties properly, would be expected to act as a reasonably prudent engineer would perform the tasks EVI undertook under its subcontract.

12. It may be said that contractors and subcontactors involved in the construction of the WST, and the Town "relied upon" the sufficiency of EVI's subcontracted engineering services in one sense. By the term "relied" the court means such third parties assumed EVI's work met professional engineering standards. The court as not been directed to any contract documents or alleged direct communications between EVI and the non- Aldrich parties that may be said to otherwise be the source of "reliance", despite the loose use of the term by some of the witnesses.

13. In a similar fashion a consumer purchasing a car may be said to "rely" that the dozens and dozens of component part suppliers and manufacturers' whose products and designs are incorporated into a car, provided a reasonably safe car. This is a typical reasonable assumption purchasers or a product or project may have, but is not the same as a party-to-party specific communication or agreement that creates an independent, legally recognized source for claimed "reliance" and additional liability. Whether assumptions about other actors may support liability depends on the nature of the relationship between the players, the type of damages suffered, and the legal theories advanced. "Reliance" premised on assumption in itself, may have little material factual import.

14. For the WST Project, the original design called for a cast-in-place concrete roof. When the construction bids came in, the projected project costs were higher than expected.

15. The Town contacted Aldrich and means to reduce WST Project costs were analyzed. After consultation with Aldrich (which in turn consulted with EVI), a contractor change order was reached to eventually use pre-cast hollow-core planks for the WST roof. This resulted from EVI providing the cost reduction engineering services in the design revision review process that led to the decisions to use pre-cast concrete planks roof design (instead of single pour-in-pace concrete roof).

16. The revised WST roof design, developed by EVI, did not include waterproofing membranes or coverings for certain exposed topping slab and lower plank units, and other portions of the redesigned roof that would be exposed to water or above the large area of the exposed water surface for the unheated WST structure (once it was filled with water).

17. In essence the WST Project contractor hired subcontractors to manufacture or procure pre-cast roofing planks for the WST, and install them consistent with the EVI-provided plans and specifications. EVI, under the Aldrich/EVI Agreement, reviewed and approved certain shop drawings for the revised WST and roof, that were consistent with its revised design plans. Although final aspects of the hollow-core planks were designed by Newstress, Inc., Newstress submitted the details of its final design (including hollow pre-cast hollow core concrete planks) to EVI for review and approval for compliance with the EVI design, before use of those planks was given to proceed.

18. For present motion practices the full details of the Town's contentions that EVI was negligent do not require close review. The Town claims EVI negligently designed the

revised roof system, knowing where and how it was to be used, and in essence negligently failed to recognize alleged design flaws in the re-designed system (and/or the proposed use of the allow pre-cast planks Newstress included in its proposals and drawings); failed to inform other WST Project players (Aldrich; contractors and subcontractors) and revise EVI's design, and/or decline approval for use of the Newstress-submitted pre-cast hollow core concrete planks.

19. In essence the Town contends that the lack of waterproofing, left portions of the system exposed to the elements and/or water contact (or condensation) and/or high humidity within the unheated tanks structure, such that the WST roof was subject to deterioration, "spalling", and eventual compromise of the WST's structural integrity (possible risk of walls and release of stored water). The Town contends the necessary remedial measures flowing from the WST defects are to replace the WST. Facially the Town has adduced expert opinion testimony as to EVI's negligence and the claimed necessity of the claimed repairs.

20. For present motion purposes, EVI is not contesting liability, but invokes the economic loss doctrine. Thus additional facts as to the clamed damages are pertinent. The Town also seeks to impose liability on EVI for the acts of Aldrich, claiming they were joint venturers. The court will assume Aldrich's acts would give rise to a negligence claim for purposes of this motion.

21. If the present WST situation were left unremedied, there could be a future, unexpected WST wall breach, and sudden water release, with the potential to cause significant property and/or personal injuries to persons and property near and "downstream" of any sudden water release.

22. The Town's ability to provide potable water and fire protection services would be disrupted during the period of demolition and reconstruction of the WST.

23. The Town would rely upon other area municipalities to provide fire protection during the period of demolition and reconstruction of the WST. The Town has not stated if it, or its residents, would or might be charged fees for such service that would be in excess of any net costs or fees to the Town as compared to the manner in which the Town currently provides fire protection services (using its own employees or volunteers and equipment).

24. The Town's manager has stated in his opinion, the need to replace the WST "has caused a lost of trust and goodwill toward the Town form the resident of Fairlee, VT, reducing the confidence the residents have in Town government and making it harder for the Town to move forward with other Town projects that are necessary".


Legal Analysis

Under Rule 56 a party is entitled to summary judgment in its favor if the movant shows that, there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. In determining whether genuine issues of fact exist, the non moving party is to receive the benefits of all reasonable doubts and inferences. *Samplid Enterprioses, Inc. v. First Vermont*

*Bank*, 165 Vt. 22 (1996); *Messier v. Metro. Life Ins. Co*., 154 Vt. 406 (1990).    Motions for summary judgment are and may be used to determine whether genuine issues of material fact exist, warranting the need for a trial.  *Bennett Estate v. Travelers Ins. Co*., 138 Vt. 189 (1980); *Sykas v. Kearns*, 135 Vt. 610 (1978).  Non-moving parties who wish to contest facts properly asserted by affidavit or otherwise in a motion for summary judgment must file a statement of contested facts and present  references to admissible documents, affidavits or other admissible materials.  V.R.C.P. 56(c).

 The Town, at Count 2, asserts negligence claims against EVI, for its own alleged negligence and as a joint venture with Aldrich, and thus vicariously co-liable with Aldrich for Aldrich's actions.

Joint Venture

As described by the Vermont Supreme Court in *Winey v. Dailey,* Inc., 161 Vt. 129, 139 (1983):

> A joint venture is a special relationship of two or more parties " 'to engage in and carry out a single business venture for joint profit.' " *Vermont Envtl. Bd. v. Chickering,* 155 Vt. 308, 317, 583 A.2d 607, 612 (1990) (quoting *Helfenbein v. Barae Inv. Co.,* 19 Ariz.App. 436, 439, 508 P.2d 101, 104 (1973)). Although not a formal partnership, it has many of the legal incidents of a partnership. See *Mislosky v. Wilhelm,* 130 Vt. 63, 69, 286 A.2d 267, 271 (1971). Thus, there must be an agreement to share in profits and losses, joint control or right to control, a joint proprietary interest in the subject matter and a community of interest in the performance of the common purpose.

The use of the term "must" in the *Winey* case description means "that *all* of the specified elements be present to find a joint venture".  *Estate of Antonio v. Pederson*, 2012 WL 6163190 at \*6 (D.Vt., December 12, 2012)(Reiss, J.) (citing *Winey*). *See also Noble v. Boppel,* 2011 WL 830169, at \*9 (D.Vt. Mar.3, 2011) (explaining that, in order to show a joint venture, "a plaintiff *must* establish the following elements[,]" before listing the elements) (emphasis supplied).

Here there was no agreement to share profit and loses, but a mere subcontract hiring of EVI to provide services to Aldrich.  Although EVI participated in the WST Project and provided structural design services and review input, the Town has failed to show EVI had any right to control the project.   The court agrees with Judge Reis's observation that "mere participation in a project does not rise to the level of control necessary for a joint venture." *Estate of Antonio, supra*, at \*9, citing *Winey*.

EVI is entitled to summary judgment on the joint venture negligence claim or theory asserted by the Town.

Economic Loss

We are left with the Town's negligence claim against EVI, which EVI claims is barred by the economic loss doctrine. As this doctrine has been described:

> The economic loss rule "prohibits recovery in tort for purely economic losses." *EBWS, LLC v. Britly Corp.,* 2007 VT 37, ¶ 30, 181 Vt. 513, 928 A.2d 497. The rule serves to maintain a distinction between contract and tort law. *Id.* As we have explained:
>
> > In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.
>
> *Id.* (citations and quotations omitted); see also *Gus' Catering, Inc. v. Menusoft Sys.,* 171 Vt. 556, 558, 762 A.2d 804, 807 (2000) (mem.) ("Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." (quotations omitted)).

*Long Trial House Condo. Ass'n v. Engelberth Const*., *Inc.,* 2012 VT 80, ¶ 10, 192 Vt. 322.

The Town first argues the "economic loss" doctrine does does not apply because the Town's losses are not "economic losses" in that - the entire WST must be replaced, not just a portion of the WST; and the Town will suffer damages from having to call upon other municipalities for fire protection services during the repairs and it has diminished ability to get citizen approval for future capital projects due the citizen disappointment in the WST Project embarked on by the Town.   The Town also argues that the growing risk of property and personal injury damages to citizens, from a growing foreseeable WST collapse is also outside of the economic loss doctrine.

In *Long Trial House Condo. Ass'n v. Engelberth Const*., *Inc.,* 2012 VT 80, 192 Vt. 322, a condominium association, of condominium owners who purchased their condominiums from a developer, sued the project contractor for repair costs stemming from faulty construction of the common areas, including (1) replacement of  properly installed and undamaged building components, that had to be removed and replaced to access faulty components; and (2) costs incurred from water damage to interior walls and painted surfaces inside specific units. Characterizing these repair costs as the difference in market value between the units as built and as they should have been built", the *Long Trail* Court stated the remedy was one for "purely economic losses resulting from 'the reduced value or costs of repair . . .  of construction defects

8

sound[ing] in contract rather than tort.'"  2012 VT 80 at ¶ 11, quoting *Heath v. Palmer*, 2006 VT 125, ¶ 15, 181 Vt. 545.

In *Walsh v. Cluba*, 2015 VT 2, 198 Vt. 45 a property owner and landlord, who signed a commercial lease with an individual, attempted to sue the corporation later set up by that individual, who came to occupy the space with no separate contract with the owner, for negligent damage to the premises.  The Court rejected the negligence claim, under the economic loss rule, citing *Long Trail*. The *Walsh* Court noted that even if the loss was characterized as physical damage to property that was the subject of the contract, the economic loss rule generally applied:

> The physical harm may be to property rather than persons, but injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law. . . . . Thus, with respect to property damage, the economic-loss rule generally applies to bar tort claims when the alleged damage is to property that is the subject of a contract between the parties

2015 VT 2 at ¶ 28.

Although the WST unit had physical deterioration to portions of it that necessitated action and were a physical change to components of the structure, under *Long Trail* and *Walsh* the  cost of repair or replacement of those damaged items are subject to the economic loss rule. The damaged project portions directly relate to the contract and per Walsh may be "considered a disappointed economic expectation for which relief lies in contract rather than tort law."    In *Long Trail*, like here, the claimant had not contractual privity with the negligent party  (and thus no direct contractual relationship or contract to try to protect itself from loss), but the economic loss doctrine was nonetheless applied.  *The Long Trail* Court reasoned the economic loss doctrine was not premised on the presence or absence of an opportunity to allocate risks,  but "[i]nstead, the focus is more appropriately on duty."  2012 VT 80 at Para. 13.

The court does not find the fact that, as to the WST, the whole unit needs replacement to warrant a different result for second reasons.   First in *Long Trail*, the economic loss doctrine's bar included damages for replacement of properly installed and undamaged building components, that had to be removed and replaced to access faulty components, so the doctrine's reach may extend beyond just faulty project components.   Second, in this court's prior 11/8/18 opinion  (pages 5 to 7) the court  described the "other property" exception to the economic loss rule,  which may exclude from the doctrine's reach damage to physical property other than the property  that which was the subject of the sued parties' contract.   Assuming portions of the

9

WST besides the pre-cast hollow core planks or roof sustained physical deterioration necessitating repair or replacement – here EVI's structural design services related to alleged deficient design / omissions as many portions of the revised WST. There is no physical damage or deterioration to property "other" than the property or product which was the topic of the EVI's contract with Aldrich. Moreover WST planks, roof, and associated supporting structures formed an integrated unit or product if some portions were "other" than the portions to which EVI's structural engineering design and review services applied. The project's component parts became so integrated into a single whole during construction that the whole unit needs to replaced as part of the repair operations even if arguably some component parts would not need to be replaced.[1] The court finds convincing the that where the claimed "other property" that is damaged is portions of an "integrated whole" product, to which sued party's contract relates to a component part, the "other property" exception to the economic loss doctrine should not apply. See example *Bay Breeze Condominium Ass'n v. Norco Windows, Inc.,* 2002 WI App 205, 257 Wis.2d 511, 651 N.W.2d 738, ("other property" economic loss doctrine not apply to damages to replace the rotting casements and wall surrounding the defective windows, reasoning "[b]ecause of the integral relationship between the windows, the casements and the surrounding walls, the windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured"); *New York Electric & Gas Corp. v. Westinghouse Electric Corp.,* 564 A.2d 919 (Pa. Super. 1989) (there is no damage to other property if a defect in one component damages part of an integrated package). See also *Mount Snow v. Grand Summit Resort Props., Inc*., Docket 564-12-03Wncv, (Vt. Superior Ct. 10/24/07) (property damage to property beyond of the contracted for resort building itself, even if "conceivably present", still covered under the economic loss doctrine as damages for repair and replacement of various parts of the resort building).

As it did in response to the Newstress, Inc. motion to dismiss pleadings, the Town seeks to assert that the fact an accidental future WST failure, that may cause imminent harm, is present - its claims fall outside the economic loss doctrine. As this court explained in its 11/8/18 opinion (at page 7):

---

[1] In *Long Trail, supra*, the economic loss doctrine applied to the replacement of facially undamaged portions of the completed structure that had to be removed to access the portion of the work requiring direct repair or replacement.

The "accident" exception to the economic loss doctrine was clarified by the *Long Trail* Court. In *Long Trail*, the condominium project owners contended the economic loss doctrine did not apply to their claims for the defective condo project components that created an unreasonable risk of harm to person or property, citing *Council of Co–Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.,* 308 Md. 18, 517 A.2d 336, 341–42 (1986). 2012 VT 80, ¶¶ 24- 28. In *Atlantis Condominium,* the plaintiffs alleged that certain latent construction defects created a fire hazard that presented a threat to the owners' and occupants' safety and to their personal and real property. The *Long Trail* Court rejected this approach as inconsistent with basic negligence principles and the Vermont economic loss doctrine, which "require[s] actual injury, not simply risk of harm" before negligent recovery is allowed. Id, ¶ 26. The *Long Trail* Court cited to the portion of its *Paquette* decision that noted, "[i]f we were to allow recovery for purely economic losses in products liability actions absent any physical harm based solely on claims that an alleged defect *could have endangered* persons or their property, warranty law would, in effect, be subsumed into tort law." *Id*, quoting *Paquette,* 168 Vt. At 264 (emphasis added by *Long Trail* Court).

The Town next asserts its negligence claims against EVI may proceed under the "professional service" exception to the economic loss rule. A plaintiff may defeat the rule's bar on the recovery of tort damages if it can show that the "professional services" exception applies. See *Long Trail House Condo. Ass'n v. Engelberth Const*., *Inc.,* 2012 VT 80, 192 Vt. 322. In *Long Trail,* the Court analyzed the economic loss rule and found that it precluded the plaintiff's claim in tort, despite the absence of privity between the plaintiff and defendant, because the relationship did not fall within the professional services exception. *Id*. ¶ 13 (citing *EBWS, LLC v. Britly Corp*., 2007 VT 37, ¶ 30, 181 Vt. 513). For the exception to apply, the parties must have a "special relationship, which creates a duty of care independent of contract obligations" and that the "key is not whether one is licensed in a particular field" but rather "the determining factor is the type of relationship created between the parties." *Id*. ¶ 13. Because contractors do not owe a special duty of care outside of their contractual obligations, the Vermont Supreme Court held that the professional services exception was inapplicable. *Id*. ¶ 19. (Citing *EBWS*'s holding that designing and building a creamery was *not* a "professional service akin to architecture" such that the professional services exception should apply).

The Court notes that while the federal court for the District of Vermont has recognized and applied the professional services exception, the Vermont Supreme Court, while recognizing the exception, has not applied it in any particular case. See *Associated Electric & Gas Insurance Services Limited v. Electric Power Systems, Inc.*, No. 5:14–cv–68, 20,14 WL 12717669, *8 (D. Vt. December 23, 2014) (finding "no case in which the Vermont Supreme Court has actually

11

found the exception to apply."). The court in *Associated Electric* synthesized Vermont Supreme Court precedent to formulate the circumstances in which the exception may apply – i.e., in the case of "an engineer, an architect or other professional" rendering a service. *Id*. (citing *Long Trail House*, 2012 VT 80, ¶ 22). The federal court found that because it was reasonable to conclude that some of the defendant's services were "engineering services," the professional services exception was applicable there and partial judgment on the pleadings for the defendant was therefore inappropriate. *Id*.

Here EVI clearly was providing engineering services on the WST Project. The Aldrich/EVI Agreement specifically was one to hire EVI for structural engineering services for the WST project, to be performed by licensed engineers. Unlike the construction contractors sued in *EBWS* and *Long Trail*, EVI " presented itself as as a provider of a specialized service" .

However mere participation in a construction project as a professional service provider (licensed engineering services) does not automatically trigger the "professional services" economic loss doctrine exception. The nature of the relationship between the plaintiff and party sued needs to be considered. As noted, under *EWBS,* the fact the sued party may or may not be performing services that require a license is not determinative, it is whether there *exists a special relationship* between the party sued (EVI) and the Town to give rise to certain tort duties. *EBWS*, 2007 VT 37, ¶ 31. As the Supreme Court recently further explained this concept:

> The question is whether the nature of the relationship—most often a professional relationship such as doctor-patient or attorney-client—is such that it "automatically triggers[s] an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1263 (Colo.2000).

*Walsh v. Cluba*, 2015 VT 2, ¶ 30.

Where privity exists between the professional service provider and the plaintiff, the contract, the existence of the contract between the parties may indeed support an independent duty of care that supports a tort action to allow the professional services exception. Here there is no contract between the Town and EVI. In *Long Trail,* the Vermont Supreme Court expressly avoided the question of whether privity is required before the "professional services" exception may apply.

12

In *Hunt Const. Group, Inc v. Brennan Beer Gorman/ Architects, P.C.*, 2008 WL 4870993, No. 1:08-CV-65 (Nov. 3 2008)(Murtha, J), a construction contractor, hired by the owner of the hotel project, sued in negligence the architects and engineers hired by the project owner, for economic losses. The district court analyzed whether the "professional services" exception applied to these parties who were not in privity. Judge Murtha concluded the exception did not apply. He noted the sued professionals' duties were to the owner which hired them, and the contractor was in essence alleging the "defendants negligently performed their duties under their contracts with [the project owner] and that as a result, [contractor] lost the benefit of its own bargain with [the project owner]". Slip op. at *3. He reasoned that to allow the contractor to recover in tort simply because it "could not succeed under its contract" would violate the "mandate" of *EBWS* that "claimants cannot seek through tort law, to alleviate losses incurred pursuant to a contract. *Id*, citing *EBWS*, quoting *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 314 (2001).

This is certainly one rationale to decline recognition of a professional services special relationship between a project owner and a contractor subcontractor which it had no contract. The Town had the ability to protect itself from the negligence of engineers working on the project, by structuring the WST Project contracts to directly contract with those professionals, or to require the contractor to use subcontracts by which those professionals agreed to indemnify the Town (directly or through professional liability insurance) for any negligence in performing under the contract. In the *Hunt Construction* matter appeal, noted below, the Second Circuit noted in *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,* 124 Wash.2d 816, 827, 881 P.2d 986 (1994) (quoted in *EBWS,* 181 Vt. at 525), the Washington court noted, "[t]he fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract.".

The *Hunt Construction* decision was appealed. *Hunt Const. Group, Inc v. Brennan Beer Gorman/ Architects, P.C*, 607 F.3d 10 (2nd Cir, 2010). The Second Circuit noted that strictly speaking the Vermont Supreme Court had not ruled whether privity is required for the professional services economic loss exception to apply and other state courts which have ruled on the matter were divided on the topic. The Second Circuit noted portions of the *EWBS* decision

13

consistent with contractual privity being required[2], and the *EWBS* Court's reference to contracting parties' ability to "self-impose duties" by protecting themselves through bargaining. 607 F.3d at 16, citing *EBWS*, 181 Vt. at 524. Ultimately the Second Circuit found that the reference in *Springfield Hydroelectric*, in its discussion of the professional services exception to the economic loss doctrine, to "a duty of care independent of *any* contractual obligations," 172 Vt. at 316, 779 A.2d 67 (emphasis added and omitted), lacked the necessary context to foreclose requiring privity for the professional services exception to apply. The Second Circuit certified the issue[3] to the Vermont Supreme Court, but it appears the *Hunt Construction* matter resolved before the Vermont Supreme Court expressly ruled on the issue.

Since *Hunt Construction*, the Vermont Supreme Court, in *Walsh, supra*, phrased the professional services "special relationship" exception as involving the "question" of "whether the nature of the relationship—most often a professional relationship such as doctor-patient or attorney-client—is such that it 'automatically triggers[s] an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship'." 2015 VT 2 at ¶ 30, quoting *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1263 (Colo.2000). This may be indicative of the view that special relationships that meet the except in the professional services setting must have their genesis in the contractual relationship. In *Walsh* the relevant parties had neither a contract nor a professional relationship, but the Court included the reference to the lack of contract in explaining why there was no "special relationship". In *Walsh* the plaintiff landlord invoked the "special relationship" exception to seek recovery from the LLC company formed by the individual who leased commercial space from the landlord, and then formed a LLC to occupy the space, which LLC allegedly caused property damage to the premises.

In *Treetop at Stratton Corporation Ass'n, Inc. v. Treetop Development Co., LLC,* Docket No. 147-3-09 Wmcv (Vt. Superior Court 2/4/11), Judge Wesley had to determine if the professional services exception to the economic loss doctrine allowed a condominium

---

[2] *EBWS,* 181 Vt. at 525, 928 A.2d 497 ("[T]here was no special duty of care created *beyond the terms of the construction contract* and no exception to the economic-loss rule applies." (emphasis added)).

[3] The Second Circuit certified the question, "[d]oes the economic loss doctrine bar a contractor from seeking purely economic damages against design professionals who allegedly provided negligent professional services in violation of the design professionals' contractual obligations with a mutual counterparty?". 607 F.3 at 17.

association to recover in negligence against the contractor and civil engineers, hired by the project developers as the condominium project was constructed, despite the lack of privity. Judge Wesley found it "doubtful" that the Vermont Supreme Court would recognize incidents of a "special relationship" required to support the professional services exception in the absence of privity of contract, noting the *EBWS* Court's reference to there being no special duty of care "beyond the terms of the construction contract". He also referenced the *Howard v. Usiak,* 172 Vt. 227, 235 (2001) case, involving a property owner's negligent design claim against the architect he hired, wherein the Supreme Court observed, that the "negligence standard is applied generally arises from the contractual responsibilities the architect assumed".  Slip Op. at page 8.

Judge Howard grappled with the professional services exception to the economic loss doctrine in *Mount Snow Grand Summit Hotel and Crown Club Owners Ass'n, Inc. v. Grand Summit Resort Props., Inc*., Docket 564-12-03Wmcv (Vt. Superior Ct. Oct. 24, 2007) ("*Mount Snow*" or "*Mount Snow v. Grand Summit Resort Props., Inc")* . In the pertinent part of the *Mount Snow* decision, a condominium owners association pursued a negligence claim, for economic losses, against the  architect / design professionals for the project, who were hired by the developer.  Judge Howard started by observing that it was clear from the terms of the design professionals' contract with the developer that such contract was not intended to give rise to any legal rights of third parties.  The same is true here. Under the Aldrich/EVI Agreement the parties recognized that "[u]nless otherwise specifically stated, any information, documents, records, data, interpretations, or opinions given to [Aldrich] by [EVI] in the course of performance of the WORK  shall be for [Aldrich's] sole use and benefit only in connection with  [the WST Project] and the same is not intended to be used or relied upon by [Aldrich] for any other  purpose not is it intended to benefit or be relied upon by any third party."[4]

Judge Howard also noted that if the professional services exception was not recognized, the unit owners were not left without a remedy - they could sue the developer/

---

[4] This contractual language also helps show the absence of an intended third party beneficiary relationship between the Town and EVI, which issue the Town has not advanced or shown here. As the Town's status as an intended third-party beneficiary, versus an incidental beneficiary, is based on the intent of the contracting parties (*Morrisville Lumber Co., Inc. v. Okcuogla* , 148 Vt. 180, 184 (1987) this contract provision is persuasive evidence that no third party beneficiary stats was intended between Aldrich and EVI as EVI was hired to work on the WST Project.

vendor of the condo units. Similarly the Town may recover from Aldrich (and is suing Aldrich) for the damages caused by any faulty WST Project design services the Town received and paid for under its contract with Aldrich.

Turning deeper, Judge Howard analyzed the nature of a "special relationship" that would need to be found to recognize the "professional services" exception in the engineering or architectural services realm. He noted the special relationship exception is often employed in professional malpractice cases where the malpractice has not resulted in physical harm, especially legal and non-medical malpractice claims. Recognition of the exception in these circumstances (where the claimant and sued party have a contract for services) is necessary because if the professional services. Special relationship exception were not recognized the economic loss doctrine would "obliterate" the malpractice action itself. *Mount Snow v. Grand Summit Resort Props., Inc*., slip op at page 6 -7, *citing Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000) (recovery for purely economic loss should be allowed in a limited class of cases involving liability for a professional duty: "To hold otherwise would in effect bar recovery in many types of malpractice actions") quoted in *Springfield Hydroelectric*, 172 Vt, at 316.

The court notes that recognition of the professional services/ special relationship exception to the economic loss doctrine for contracting parties is necessary to advance the public policies behind recognition of professional malpractice actions to begin with - namely that physicians, engineers, architects and certain licensed and regulated professionals who contract with clients should not be able to limit their damage exposure to the clients who hire them by imposing limitations in their contracts with clients. As Judge Howard has also noted, for professional services malpractice actions the existence of a contract between the parties (or at least a third party beneficiary relationship) is a prerequisite for the malpractice claim, and recognition of a duty owed to the claimant, to exist. *Mount Snow v. Grand Summit Resort Props., Inc*., slip op. at 7, citing *Hedges v. Durrance*, 2003 VT 63.[5]

_____

[5] As Judge Howard stated in *Mount Snow Grand Summit Hotel*, to apply the special relationship/professional services exception outside of the existence of a contractual or third party beneficiary relationship setting, "we would essentially be allowing an action for professional negligence even though an action for professional malpractice would be impossible due to the absence of one of its essential elements" . Slip op. at Page 8.

16

The court finds these factors, that necessarily require recognition of the special relationship/ professional services exception for persons who hire and use professionals to avoid contractual limitations of liability, are absent for non-contracting parties, like the Town's relationship to EVI.

Further to allow the Town to recover against EVI for economic losses caused by EVI's professional negligence, despite the lack of contractual privity, the court would allow the Town to take advantage of EVI's forced enhanced liability exposure to its contracting clients, despite the fact the Town chose to structure its WST Project contracts to contract with a single engineering firm. The Town did not require that Aldrich require its subcontractors provide contractual indemnity to the Town.

As noted, non recognition of the economic loss exception in this case does not leave the Town without a remedy. The Town's recovery rights against Aldrich exist independent of, and despite, any recognition or non-recognition of the professional services economic loss exception as to the Town's claims against EVI. *EBWS*, 181 VT. at 525 ("in contract the parties self-impose duties and protect themselves through bargaining"). As Judge Howard recognized in *Mount Snow, supra*, major construction projects can produce major problems and resulting uncertainties on how much profit participants and risk exposure can expect to make on the project, resulting in detailed contracts governing the inter-relationships between the participating parties. These contracts allocate the risks, including the foreseeable risks of litigation claims by purchasers or owners of the project. Slip op. at 3.

The court recognizes it may have been foreseeable that design errors by EVI in its structural engineering services subcontract could cause economic loss to the Town. But "foreseeability alone is not sufficient to warrant the imposition of a professional duty". *Long Trail*, 2012 VT 80 at Para 23, citing *Hamill, supra*, 2015 VT 133, Para 6, 179 Vt. 250 and S. Barrett, *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C. L. Rev. 891, 908 (1989)("Under traditional negligence concepts, purely economic losses are outside the scope of recovery regardless of how foreseeable those losses are"); *Hunt Const. Group, Inc., supra*, 2008 WL 4870993, at *3 (Murtha, J) (stating since the Vermont professional relationship exception focuses on the relationship between the parties, and not foreseeability of injury, "although foreseeability is a necessary component of any duty grounded in tort, it is not

17

sufficient to establish a duty in tort"); *Mount Snow, supra*, slip op. at pages 3 and 8 (concluding the same, after noting the use of detailed intra-party contracts to allocate foreseeable litigation risks of "major problems" in complex projects, and thus rejecting the assumption "that providers of professional services by definition have a special relationship with anyone who is foreseeably impacted by their work").

For the reasons stated above the court does not find the special relationship/professional services exception to the economic loss rule applicable in this case.

The Town lastly argues that even if it may not rely on the "professional services" exception to the economic loss doctrine for its direct damages, it should be allowed recovery in its negligence action against EVI for the Town's claimed damage categories as to reputational-related losses and possible increased fire protection costs during demolition and repair of the WST.

The town a manager's opinion that the WST events may tarnish public confidence in the Town and complicate obtaining residents' approval for future capital projects, is insufficient. There are no details for the basis of this conclusory opinion of what a majority of citizens might think. *In Re Shenandoah, LLC*, 2011 VT 68, ¶ 17, 190 Vt. 149 ("It is well-established that "ultimate or conclusory facts and conclusions of law ... cannot be utilized on a summary-judgment motion." 10B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738, at 346–56 (3d ed. 1998)"); see also *Lussier v. Truax*, 161 Vt. 611, 612, 643 A.2d 843, 844 (1993) (mem.) (reaching similar conclusion). Assuming it might even be accurate and otherwise admissible, the Town has not provided authority that a Town has the right to seek, as a non-corporeal entity, for losses to its "reputation" among its citizens. Further even if one assumes town residents would be more reluctant to approve reasonably necessary future projects because of the WST saga (a very dubious and speculative proposition in itself) – that does not result to a damage or harm to a Town. The court does not see how a Town has a monetary damage claim for its citizens approving or not approving projects of differing costs or priorities.

Assuming the Town has factually asserted that it will not only need to call upon outlying municipalities for fire protection services AND incur costs to do so (which second proposition is not stated in the manager's affidavit), such damages would not be recoverable in a negligence

claim against EVI. The Town has not demonstrated why such losses - not involving unanticipated personal injury, or physical damage or repair/replacement of property that is excepted from the economic loss rule - are also not barred by the economic loss rule or general tort duty limitation principles. *Gus Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558 (2000) (mem)("[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." (quotations omitted), quoting and citing *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 77 (2000) and *Breslauer v. Fayston School District*, 163 Vt. 416 (1995)). See also *Wentworth v. Crawford & Co.,* 174 Vt. 118, 126, 807 A.2d 351, 356 (2002) ("It is well established in Vermont that absent some accompanying physical harm, there is no duty to exercise reasonable care to protect another's economic interests."); *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 33, 179 Vt. 250 (citing principle and deciding independent adjusters owed no duty to insured and were not liable for mold growth).

## SUMMARY

Whatever negligence EVI may have committed in fulfilling its subcontract with Aldrich for structural engineering services on the WST Project, the economic loss doctrine bars the Town's negligence claim against that subcontractor for the Town's losses for the failure of the contracting engineer, Aldrich, to deliver the Town the benefit of the bargain under their contract. Foreseeability of harm is insufficient to create a cognizable tort duty between EVI and the Town, despite the fact EVI provided licenses professional services for the WST Project, in the absence of a contractual or intended third party beneficiary relationship between the Town and EVI.

EVI's motion for summary judgment is GRANTED.

_____

Michael J. Harris
Superior Court Judge


Notifications:
William H. Meub (ERN 3769), Attorney for Plaintiff Town of Fairlee
Andrew H. Maass (ERN 1076), Attorney for Defendant Forcier Aldrich & Associates

Andrew H. Maass (ERN 1076), Attorney for Defendant Aldrich & Elliot, P.C.
David D. Aman (ERN 1373), Attorney for Defendant Engineering Ventures, Inc
Sean M. Toohey (ERN 4039), Attorney for Defendant Paragon Construction, Inc.
Susan J. Flynn (ERN 3111), Attorney for Defendant Keymont Construction, Inc.
Debbie Lorusso Makris (ERN 6383), Attorney for Defendant Newstress, Inc.